## Owen v. State.

(In Banc. Nov. 27, 1944. Suggestion of Error Overruled Dec. 22, 1945).

[19 So. (2d) 822. No. 35676.]

**Sandy R. King**, of Durant, for appellant.

Greek L. Rice, Attorney General, by R. O. Arrington, Assistant Attorney General, for appellee.

Greek L. Rice, Attorney General, by R. O. Arrington, Assistant Attorney General, and J. P. Coleman, of Ackerman, for appellee, on suggestion of error.

564

Argued orally by Sandy R. King, for appellant, and by R. O. Arrington, for appellee.

Roberds, J., delivered the opinion of the court.

Appellant Owen was indicted for, and convicted of, manslaughter in the killing of one Ollie M. Murphy, and sentenced to seven years in the statute penitentiary, the jury having asked the mercy of the court.

It is strongly urged, among other contentions on this appeal, that there is no evidence to sustain the verdict and the case should be reversed and appellant discharged, but,

if not, that the verdict is against the overwhelming weight of the credible, believable evidence, and we should remand the case to be tried by another jury. The judges are divided on the first contention but are unanimous that the second should be sustained. A summary of the evidence will demonstrate, we think, ample justification for that conclusion.

Appellant and his wife operated a combination grocery store and cafe in the City of Kosciusko, Mississippi, located two blocks west of the main business section of the City. The building fronts northwest on old highway 12. To the rear and south of this building is located the residence of Mr. and Mrs. Owen. The backs of these buildings face each other and are some twenty yards apart, a walk-way connecting them. The main entrance to the store building is by a door at the north. This opens into a space about six feet wide and extending back south some fifteen feet. To the right of the door entrance is a counter extending from the north wall south some twelve feet, on the south end of which is a cash register. In front of this counter, on the east, are stools for use by customers when eating or drinking at the counter. To the right and west of this counter are groceries and soft drinks and equipment and space for keeping and serving them. In the west wall of the building is a window about opposite the cash register, and between the window and the cash register is an ice box. To the south of this is the kitchen. To the left or east of the front door is a partition about six feet high with an opening of about the same distance between the top of this partition and the ceiling. The south end of this partition is about opposite and six feet east of the cash register. At the south end of this partition is an opening into a large room on the east extending entirely across the building north and south. In this room are booths and tables for use in serving and consuming food. Some ten feet south of the end of the partition is a large post

and near this post is located a music box. There is a door at the south end of the building.

The persons working at the Owen business, besides himself, were Mrs. Owen and three young ladies—Misses Mary Carlson and Ruth Norris, and Mrs. Viola Raspberry —ranging in age from eighteen to twenty-five at the time they testified at the trial. Miss Carlson was then eighteen and in the twelfth grade in high school, and was living in the Owen home, and apparently being reared by them. The husband of Mrs. Raspberry was in the armed forces.

On the occasion in question, Ollie Murphy and his friend Earl Benton showed up in an automobile at the Owen place of business between four and five o'clock in the afternoon. They were drinking rather freely. They had consumed at least one pint of whiskey and had just returned from Durant, some twenty miles distant, where they had obtained more whiskey, a part of which they yet had in their possession. They took seats at a table in the east room and called for soft drinks. As Miss Norris served them Murphy produced and placed upon the table a bottle of whiskey. Miss Norris explained to him that drinking of intoxicants was not permitted and asked him to desist from so doing. Murphy became very angry and, referring to the women as lewd persons, with an oath, said he would drink his whiskey when and where it suited him. Miss Norris sought Mrs. Owen, who was in the kitchen, for aid. Mrs. Owen came forward and asked Murphy and Benton not to drink, explaining there were signs posted about the place asking customers not to do that. Murphy again in vile and abusive language denounced all the ladies present, declared his intention to drink and threatened violence to any one interfering with him. There was a soldier in uniform present. Mrs. Owen appealed to him for assistance and protection. This soldier succeeded in ejecting Murphy from the building through the front door, Murphy resisting by violent use of his hands and feet and cursing all of those present. No one knew the soldier. After ejecting Murphy he disap-

pears from the drama. Murphy went to the west side of the building, where he obtained a large rock from a flower bed and threw it through the west window, breaking the screen and scattering glass about the premises, some of which went as far as the cash register. He was apparently trying to hit Mrs. Owen, who had gone to the ice box. However, the rock missed her. Mrs. Owen saw Murphy start back towards the north door. She and Mrs. Raspberry rushed to the door to close and lock it but Murphy beat them to it and pushed into the room. He had an open knife on his hand and he cut at the throat of Mrs. Raspberry, who turned and ran screaming through the south door towards the Owen residence. Murphy, threatening to kill "all of you sons of bitches," followed Mrs. Owen and Misses Carlson and Norris about the room, with the open knife in his hand, trying to cut them. Mr. Owen, who was working in the bathroom of his home, heard the screams and rushed into the store through the back door. The three ladies had gotten into the east room, pursued by Murphy, and they were trying to keep tables between themselves and him. Owen called to Murphy to halt or stop and appealed to Benton, who was seated on one of the stools at the counter, to help him, but Benton was too stupefied with drink to respond. Owen got a pistol at the cash register and, as Murphy continued his pursuit and threats, Owen began to shoot at him. He shot five times, one or more of the shots entering Murphy's back, which was natural from their respective positions. Murphy had gotten the ladies into a corner in the east room when the fatal shot hit him. There he dropped his knife and turned and tried to go to the front door. He fell some five or six feet before reaching it. Mrs. Owen called the office of the sheriff and Mr. Braswell, deputy sheriff, quickly reached the scene. Mrs. Owen gave him the knife and Owen gave him the pistol. Mr. Braswell picked up the rock from the floor.

That was the substance of the testimony of all of the eyewitnesses except Benton, whose evidence is given later herein.

In addition to the eyewitensses inside the building, two passing school boys saw Murphy pick up the rock and throw it through the window and come back towards the front door.

The only evidence which tends to contradict the foregoing was given by Benton, Braswell and one Nelson, who were all of the witnesses for the state except the undertaker. Benton testified that he was seated upon one of the stools at the counter when Murphy threw the rock through the window; that he moved into a chair near the music box. We quote the remainder of his direct examination:

"Q. Then what happened? A. Well, the next thing I knowed, I heard a commotion at the front here and Mr. Owen was shooting Mr. Murphy and he was running towards me.

"Q. Who was running towards you? A. Mr. Murphy.

"Q. Who was doing the shooting? A. Mr. Owen.

"Q. Where abouts in his body was Mr. Owen shooting him? A. Well, he was shooting him in the back."

On cross-examination this witness said:

"A. I heard a commotion in there but I didn't see them until I heard the shots.

"Q. So you don't know, as a matter of fact, what happened up there? A. No, I don't.

"Q. You don't know what precipitated—what caused Mr. Owen to shoot Mr. Murphy? A. No, sir.

"Q. And are unable to tell the jury what caused it? A. No, sir, I'm not able to tell."

Benton admitted he was pretty drunk—"pretty well polluted," as expressed in his admission. Just what is believable from and is proved by his evidence, in view of its contradictions and vagueness and his condition, is difficult to say. It might be added that all of the other witnesses who were present say he was seated upon one of the stools at the counter and was so stupefied by drink

that he did not know what was taking place. It might be further noted, in this connection, that Braswell testified that when he arrived Benton was in an automobile in front of the store and that he was drunk and Braswell arrested and placed him in jail for being in that condition.

Braswell testified he got the call from Mrs. Owen and reached the scene just before Murphy expired; that Murphy's head was towards the front door and some three to four feet therefrom and that his feet extended back towards the opening into the east room; that he thought Murphy had been shot five times, but there was some question whether some of the holes indicated the bullets were entering or leaving the body. In other words, one bullet might have made two holes. He explained where the bullets had entered the walls and tables of the east room, and said one had hit the music box; that Mrs. Owen gave him the knife and Mr. Owen gave him the pistol, and Mrs. Owen, at his suggestion, called the funeral home. He found the rock and the shattered glass on the floor. He said he examined the premises and did not find the knife. That is the only possible contradiction in his evidence and that of the eyewitnesses. It is not clear just when he made his examination, except he says he did so before Mrs. Owen gave him the knife. Mrs. Owen and another witness had testified that Murphy dropped the knife in the corner of the east room, where he had the women hemmed when the fatal shot hit him, and that later, when Mr. Braswell was examining the body of Mr. Murphy, that Mrs. Owen picked up the knife, and, a little later, gave it to Braswell.

Nelson, the only other witness for the state except the undertaker, said he was a fellow worker of Murphy at a stave mill, and that the knife introduced in evidence as being the one Murphy had on this occasion was not the knife he had seen Murphy using about his work at the mill.

From this it is apparent that the only possible questions, if any, for the jury to pass upon were (1) whether

Owen used more force, or shot more times, than was apparently necessary to prevent Murphy from taking the life or doing great bodily harm to either one of the ladies being assaulted by him, and, if so, (2) whether the excess force, or unnecessary shot, caused the death of Murphy. But it is also evident that the great weight of the credible evidence is that he did not do so. See Ray v. State, 175 Miss. 623, 168 So. 617; Cogsdell v. State, 183 Miss. 826, 185 So. 206; Patterson v. State, 188 Miss. 718, 196 So. 757; Upton v. State, 192 Miss. 339, 6 So. (2d) 129; Lyle v. State, 193 Miss. 102, 8 So. (2d) 459.

Reversed and remanded.

### ON SUGGESTION OF ERROR.

**Griffith, J.,** delivered the opinion of the court on suggestion of error.

The state presents four points in its suggestion of error. We have considered the last two of these points and are satisfied to adhere to our original opinion on them. The first two points were not raised, or even mentioned, by the state on the original submission, and we, of course, were not obliged of our own motion to raise them. We therefor say again, as we said and merely repeated a few weeks ago in Mississippi State Board of Health v. Johnson, 197 Miss. 417, 19 So. (2d) 827:

"Several new points have been presented and argued in the suggestion of error. As to these, we again call attention to the rule that new points made and presented for the first time on a suggestion of error are not considered unless exceptional reason therefor is shown, and we find none such here. Eady v. State, 153 Miss. 696, 122 So. 199; State v. Tann, 172 Miss. [162], 167, 158 So. 777, 159 So. 539."

Suggestion of error overruled.