Minnie T. Moody was indicted, tried and convicted in the Circuit Court of George County, Honorable Darwin M. Maples, presiding, for the crime of arson and was sentenced to five (5) years in the Mississippi State Department of Corrections. We reverse the judgment of the lower court and discharge the appellant on the ground that the verdict was against the overwhelming weight of the evidence.
On December 14, 1977, at approximately 11:45 a.m. the Rocky Creek Volunteer Fire Department received a fire call to the home of Ford Moody and his wife, Minnie T. Moody, the appellant. When the firemen arrived, the house was in flames, mainly in the center, and the fire had burst through the roof. After the fire was extinguished, examination indicated that most of the fire was around the hot water heater in the bathroom area which was its apparent origin.
At 6:10 a.m. on December 15, the next day, the fire department received another call to the same property and, upon arriving at the house, the firemen found a mattress smoldering in the front bedroom. The mattress was pulled from the house, the fire was put out and the firemen left about 7:15 a.m., at which time there was no smoke or fire remaining in the house, according to fireman Smith. A third call to the Moody home was received at 9:15 on the same morning and when the firemen arrived, the house had burned practically to the ground.
At the time of the first fire, Ford Moody was in Jackson. He was notified of the fire around 2:00 p.m. on December 14, and he left for Rocky Creek and arrived there about 5:30 or 6:00 p.m. He did not go to the house that night.
It was undisputed that on December 13, around 8:00 a.m. Minnie Moody went from Lucedale to Alabama to visit a friend. She was accompanied by Ruby Moody, Joyce Baxter, Debbie Ainsworth, David Wayne Shoemaker, Ernest Lavern Moody, Johnny Moody and Herbert Ray Christian. They spent the night in Alabama and about 6:00 p.m. the next day, learned that the house had burned and they returned to Lucedale (near the home). Appellant arrived there around 9:00 or 9:30 p.m. that evening, spent the night with Ford Moody; the next morning they drove to the burned home and viewed same around 7:00 to 7:30 a.m., went to Lucedale and then they returned to the house about 11:00 a.m. It had burned to the ground.
The house was a seven-year-old frame building and was financed for ten (10) or fifteen (15) years by Mid-State Homes of Tampa, Florida, with mortgage payments of sixty-seven dollars and twenty cents ($67.20) per month. It was insured against fire loss. After the fire, Mr. Moody continued to pay the notes on the mortgage and was doing so at the date of trial. He was told by the insurance adjuster following the first fire not to bother anything on the premises. He complied with the directive, and, as a result, all personal property of him and appellant was destroyed.
The only evidence which connects appellant with the fire was the testimony of two co-indictees, Larry James Malone (age not shown) and David Wayne Shoemaker (age 19 years). Malone was a great nephew of appellant. He testified that he set the house on fire December 14 by setting a towel with a candle at the hot water heater and that he did so upon the promise of appellant to pay him one hundred dollars ($100.00). He stated that about a week and a half before the fire appellant had made the offer to him.
David Wayne Shoemaker went to Alabama with appellant and her children on December 14, and he was there at the time of the first fire. He testified that he set a fire in the back bedroom on December 15 around 6:00 or 7:00 a.m. upon the promise of Minnie Moody to pay him one hundred dollars ($100.00); that he started the fire by *Page 410 
lighting tar paper which was hanging on the wall; that appellant and her husband were waiting for him in the car near the house and that Ernest Moody, appellant's son, was with him at the time he set the fire. No money was ever paid Malone or Shoemaker by appellant. She, her husband and Ernest Moody all testified that on the morning appellant and Moody went to the house (December 15), Shoemaker accompanied them but that he and Ernest Moody never left the automobile. Appellant denied any knowledge of, or involvement in, the crime.
Larry James Malone was indicted for arson and indicated that he would enter a plea of guilty. Shoemaker had been indicted for arson and stated that he would plead guilty and that he also had entered a plea of guilty to burglary. He had not been sentenced at the time of this trial. The following testimony of Malone shows that he may have been influenced by officers who interrogated him:
 "Q. You don't really know where you are in this thing do you —
 A. That's what I've been trying to tell everybody, but nobody don't seem to listen.
 Q. You are just pushed from pillow [sic] to post, aren't you?
 A. About that a way, yes, sir.
 Q. When somebody tells you which way to go, you go?
 A. If it is a law enforcement officer, or counsel, or somebody like that, I try to listen. I figure they know what is best.
 Q. What they tell you to do, this is what you do?
 A. Yes sir."
Malone's testimony consumes approximately two (2) pages of the record without any cross-examination. There is no detail as to when, where, or the occasion, the alleged offer of appellant was made to get him to burn the house or whether anyone else was present.
Shoemaker stated that appellant made her offer to him in the car, that he got out, went to the house and set fire to some tar paper in the back bedroom, that Ernest Moody was with him and that the other Moodys remained in the car. Fireman Smith testified that this fire started on a mattress, that the mattress was pulled out of the house and was wetted down. As stated, Minnie Moody, Ford Moody, and Ernest Moody testified that Shoemaker remained in the car.
The principle is well settled that an accused may be convicted on the uncorroborated testimony of an accomplice, but that such testimony must be viewed with great caution and suspicion. In the arson case of Mister v. State, 190 So.2d 869 (Miss. 1966), this Court quoted Cole v. State, 217 Miss. 779, 65 So.2d 262 (1953) which stated:
 "`This Court has adopted a rule that a defendant can be convicted on the uncorroborated testimony of an accomplice, but it has carefully restricted the scope of that doctrine by holding that such uncorroborated testimony should be viewed with great caution and suspicion, and that it must be reasonable and not improbable or self-contradictory, or substantially impeached.'" 190 So.2d at 870.
Shoemaker had either entered a plea of guilty or indicated his guilt to burglary and arson during the same term of court at which appellant was convicted. His testimony was contradicted, was not reasonable and was impeached.
The testimony of Malone, absent detailed facts, indicates that he had an interest in the case from the standpoint of his own guilty plea, and that he was influenced by practically anything an officer mentioned. Appellant and her husband lost their home and all contents with no apparent gain to be obtained from the fire insofar as the record shows. Although no motive is required for conviction of an accused, the absence of motive in the present case reflects upon the credibility of the two co-indictees.
We are of the opinion that the verdict of the jury is contrary to the overwhelming weight of the evidence and that the defendant *Page 411 
should be discharged. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
REVERSED AND APPELLANT DISCHARGED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.