Anderson White was indicted, tried and convicted in the Circuit Court of Warren County, Honorable John E. Ellis, presiding, on a charge of arson, viz, setting fire to, and burning, his automobile for the purpose of defrauding the insurer. White was sentenced to serve eighteen (18) months in custody of the Mississippi Department of Corrections, and he has appealed to this Court.
Appellant testified that on Christmas Day, 1980, he was en route to the home of a young lady who lived in the vicinity of Vicksburg. He was driving his automobile and, when approximately one-half (1/2) mile from the young lady's house, smoke erupted from under the hood. Appellant stopped to inspect the engine and saw a small flame near the carburetor, which became larger and began to spread. He ran to a nearby house for help and, since there was no telephone at the residence, went to another house and asked the owner to call the fire department in Vicksburg. He returned to the car, which was burning rapidly. Shortly, the young lady whom he had started to see, drove up in the company of another male. They took appellant to a telephone where he again called the fire department. Within approximately fifteen (15) minutes the fire engine arrived. At that time, the fire had burned from the engine rearward into the automobile.
Members of the fire department, after extinguishing the flame, examined the automobile and there was nothing about it to indicate evidence of arson. A wrecker removed the charred car to Presley's Wrecker Shop where it was stored in a fenced lot for safekeeping. The next day, fire investigators from Vicksburg Fire Department examined the vehicle in the lot but detected nothing suspicious. Three days later on December 29, 1980, an investigator from the State Fire Marshal's Office examined the vehicle.[1] From that investigation, a part of the cushion on the rear seat was removed and forwarded to the *Page 1381 
State Crime Laboratory, and tests indicated the presence of gasoline.
Appellant also testified that the vehicle was in good condition; that he had improved it by adding certain parts, including two new front tires; and that recently he had the motor tuned. State Farm Insurance Company was the insurance carrier on the automobile and paid $6,400 in settlement of the loss, making the check payable to appellant and GMAC Finance Company. A total of $5,700 was owed on the automobile at the time of the fire. The most damaging evidence against appellant was that of Kenneth Dwayne Page, a wrecker driver for Presley's Wrecker Service. He testified that on December 24, 1980, he had a telephone conversation with appellant, and was informed that appellant had wrecked his car and decided to get rid of it. He further testified:
 And he said, "Well, how do people get rid of cars?" I said, "As for [sic] an insurance company, won't replace is a burned car. If you burn a dash of a car or engine of a car or any part of a car you can't really duplicate that or replace, you know, the whole dash. Before they'll go to that expense, they'll total it out." So I told him, "The best thing to do is to burn it. But if you burn it, make sure you do it where the fire fighters won't get there so fast. You'll just have a whole lot of smoke and damage, you know, stuff they can fix."
Page also testified that appellant asked him to help burn the car; that he refused; that after the car had burned, he asked appellant, if he had actually burned it, and appellant smiled and replied, "Man, you know I wouldn't do that;" that appellant then told him his carburetor had backfired and caused the gas tank of the automobile to explode.[2] This conversation was supposed to have been had with appellant approximately two weeks before the trial.
Evidence for the appellant showed that Page had been made aware of the fact that, if appellant was convicted of arson, Page would be eligible to receive $1,000 for cooperating and testifying on behalf of the State. Testimony of the investigator from the State Fire Marshal's Office was inconsistent in connection with that offer of reward and it was impeached to some extent.
The appellant has assigned two errors in the trial below, which follow:
 1. The lower court erred in denying the defendant a suppression hearing on the warrantless searches and seizures by the State of the automobile.
 2. The lower court erred in not suppressing the evidence obtained by the State from the warrantless searches and seizures of the automobile.
Although the appellant asked for a peremptory instruction at the conclusion of all the evidence, he has not assigned as error refusal to grant that instruction.
Under the two assigned errors, the appellant contends that his automobile was searched and the piece of cushion was taken and tested without obtaining same with a search warrant. It is unnecessary to address those assignments of error in view of our conclusion in the case. We do note, however, that the vehicle had been stored in the lot for three days and the record does not indicate that, during such time, there was probable cause to believe that arson was involved.
We have carefully examined the entire record and are of the opinion that the State of Mississippi failed to meet its burden of proof and failed to show that the appellant was guilty of arson beyond reasonable doubt. Edwards v. State, 217 So.2d 14
(Miss. 1968); Pendergrass v. State, 193 So.2d 126 (Miss. 1966);Ruffin v. State, 203 Miss. 1, 32 So.2d 882 (1949). Therefore, under Miss.Sup.Ct.Rule 6(b) we notice the plain error committed by the lower court in refusing to grant the peremptory instruction for appellant. Hemphill v. State, 313 So.2d 25
(Miss. 1975); McMullen v. State, 291 So.2d 537 (Miss. 1974). The judgment of the lower court is reversed, and judgment is rendered here in favor of appellant. McQueen v. State,423 So.2d 800 (Miss. 1982); Bennett v. State, 374 So.2d 803 *Page 1382 
(Miss. 1979); Jones v. State, 368 So.2d 1265 (Miss. 1979).
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
[1] This was the first day of investigation by the State Fire Marshal's Office.
[2] The gas tank did not explode.