645 So.2d 903 (1994)
Aundray Radell ISAAC
v.
STATE of Mississippi.
No. 92-KA-0436.
Supreme Court of Mississippi.
October 13, 1994.
Rehearing Denied December 8, 1994.
John P. Price, McComb, for appellant.
Michael C. Moore, Atty. Gen., Jeffrey A. Klingfuss, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION.
On March 18, 1992, after a trial by jury, the Appellant, Aundray Radell Isaac (Isaac), was found guilty of first degree arson in violation of Miss. Code Ann. § 97-17-1 (1972). Following the denial of his Motion for New Trial, Isaac filed his Notice of Appeal to this Court assigning as error the following:
I. THE TRIAL COURT ERRED IN REFUSING TO GRANT A DIRECTED VERDICT AT THE END OF THE STATE'S CASE IN CHIEF.
II. THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S REQUEST FOR A PEREMPTORY INSTRUCTION (D-1) AT THE CONCLUSION OF ALL THE EVIDENCE.

*904 III. THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE IN THAT THE STATE FAILED TO PROVE MALICE AND WILLINGNESS AS A NECESSARY ELEMENT OF THE OFFENSE OF FIRST DEGREE ARSON.

II. STATEMENT OF THE FACTS.
In the early morning hours of March 11, 1991, a fire occurred in Building B-11, Apartment 4, Burgland Heights, in McComb, Mississippi. At the time of this fire, the apartment was occupied by Shannon Jackson and her children. The fire department was called to the scene of this fire, but when they arrived the fire had already been extinguished.
Two days later, on March 13, 1991, Aundray Isaac, was arrested for starting this fire. In the October 1991 term, Isaac was indicted by the Pike County Grand Jury of first degree arson. The indictment read in part:
Aundray Radell Isaac ... did wilfully, unlawfully, feloniously and maliciously set fire to that certain apartment type dwelling house owned by the United States Department of Housing and Urban Development .. .
The first of the state's four witnesses was Shannon Jackson who lived in the apartment at the time of the fire, and who testified that she had seen Isaac on Sunday afternoon, March 10, 1991, outside of her apartment. Isaac came back to Jackson's apartment at approximately 1:30 a.m. on the morning of March 11, 1991. Isaac knocked on her front door at this time. He wanted her to open the door, but she refused to do so. She and Isaac talked for about ten or fifteen minutes through the door before she told him to leave. It is important to note that Jackson had a towel draped over her front door on both sides of the door. She testified that the towel came down to just above the peep hole on the door. At this point, Jackson went back to bed. The next thing that she said she remembered was seeing a "red glare" on the wall by the staircase. This was around 3:00 a.m. She then went downstairs to the front door. She said that when she went downstairs, the towel over the door was on fire. Isaac was at the front door telling her to open the door, but she would not do so. She told Isaac that the door could just burn down because she was not going to let him in her apartment. She then went upstairs to get her children. She and her children left the apartment because of the smoke. They left the apartment through the back door. She saw Isaac at the back of her apartment when she left. She said that as she left her apartment, Isaac asked her not to call the police. Jackson then went to her neighbor's apartment and called the police. She remained at her neighbor's apartment until the police arrived. Jackson said that when she left her apartment, it was still burning. She did not go back to her apartment until the fire department had cleared it of smoke. When she returned to her apartment, Isaac was not there and she said that she did not know where he had gone.
Jackson testified that when she returned to her apartment, part of her screen door had been burned from the top. She said that it looked like something had melted on her floor. In addition, she said that she did not see the towel that had been draped across the door and guessed that it had been burned. Jackson immediately started living in her apartment again the night of the fire. Jackson further testified that Isaac was the person who put out the fire. He did so with a fire extinguisher that Jackson kept in her kitchen.
Finally, Jackson stated that she did not know how the fire started. However, upon questioning on cross-examination, she said that she did not think that Isaac intentionally started this fire.
In addition to Jackson's testimony regarding the details of this fire, it is also important to note the relationship between Isaac and Jackson. At the time of trial, Jackson had known Isaac for four years. They had lived together in her apartment. She said that while she and Isaac had experienced their ups and downs in their relationship, they were getting along well on the day of the fire. However, he was not living with her at that time because she "had put him out" a *905 week or two earlier. The record established that Isaac is the father of two of Jackson's children. Jackson said Isaac started living with her again about two days after the fire and lived with her until he went to jail.
The State's second witness was Joyce Magee. Magee is employed with the McComb Housing Authority as tenant selection supervisor and project manager. She said that she has known Jackson since she became a tenant in May of 1990, and has known Isaac all of his life. She testified that on a previous occasion Isaac kicked in a door to Jackson's apartment. She also said that at one point Jackson indicated that she was afraid of Isaac. Finally, Magee testified that the damage to Jackson's apartment as a result of this fire amounted to $550.00.
The State's next witness was Clint Weekly of the McComb Fire Department. Weekly had been a full-time fireman since July, 1987, and had been a part-time fireman since November, 1985. He was on duty on the early morning hours of March 11, 1991, and received a call from the McComb Police Department concerning this fire at 3:17 a.m. His unit was the first on the scene of the fire, arriving at approximately 3:19 a.m. He said that when he arrived at Jackson's apartment, he saw that the front door had been burned and heat damaged. The house was full of smoke and there was a powder residue from a dry chemical fire extinguisher. When the fire department arrived at Jackson's apartment, the fire had been extinguished by a fire extinguisher. Also, he said that while he was there, he did not see Isaac but that Isaac's name was mentioned. He testified that the origin of the fire was outside the front door around the peep hole, below the towel. When he arrived, he saw only a small piece of the towel lying on the floor. He stated that he could not smell any signs of an accelerant[1] because with a dry chemical in the air a person would not be able to smell it once the chemical entered the nose. However, he did say that the burn pattern and the fire burning as fast as it did were evidence that an accelerant was used. Finally, he stated that as far as he knows, no one ever tested for the presence of an accelerant.
The State's final witness was Jimmy Carruth, a detective with the McComb Police Department. Carruth had been in law enforcement 24 years at the time of the trial. He investigated this fire by going to Jackson's apartment, interviewing her, and taking a number of photographs. Carruth testified that from the evidence he received from Jackson, the photographs, and the evidence he found at the scene, he concluded that Isaac was the perpetrator of the fire. He then went directly to the office and signed a criminal affidavit charging Isaac with the arson of Jackson's apartment. Isaac was arrested on March 13, 1991. Carruth interviewed Isaac concerning the fire at Jackson's apartment. Carruth, upon defense counsel's request, read into evidence a portion of a written report concerning what Isaac told him about the fire. The portion of this report that Carruth read into evidence is as follows:
Aundrea (sic) said that he was at some club and was on his way home about 1:00 or 1:30 a.m. He stopped at Shannon's [Jackson's] apartment and knocked, and she did not let him in. He stated that there was a towel, a terry cloth type, over the door window, and he pulled the towel up and knocked on the glass window, and doing this he had a cigarette in his hand and believes this is what caught the towel on fire. Aundrea (sic) further stated that he did not know the towel was afire until Shannon [Jackson] came out the back door and he saw the fire on the front door. This is when he got the fire extinguisher from the apartment and put the fire out. He also stated that it was an accident, that the towel caught on fire, and that he did not intentionally start this fire. I questioned him if it was the only time he tried to get into Shannon's [Jackson's] door. Aundrea (sic) stated that it was the only time and it was about 1:00 or 1:30 a.m. Also stated that he lived with this girl and he had two children by her, and I asked him why she was making all those charges *906 against him for trespassing and burglary, and he stated, he said that she was getting back at him for coming in late at night.
Finally, Carruth acknowledged that he was not present at the time of the fire and that what he knows about the fire is derived from his interviews and going to the scene.
Following the testimony of Jimmy Carruth, the State rested its case. Isaac then moved for a directed verdict contending that the State had not proven that he intentionally or willfully set this fire. The trial judge denied this motion stating:
Well, the testimony is thus far by Miss Shannon Jackson, a reluctant witness, that the only person outside was, at that hour of the morning, between 1:00 and 3:00, was the defendant, and that the fire started on the outside, and apparently because of the fact she would not let him come into her apartment. Apparently, you say that no reasonable person could come to the conclusion, but it would seem to me that I think they could come to the conclusion that he set the fire, and that the fire was set willfully, unlawfully, feloniously and maliciously. And, fortunately, it didn't burn things down and apparently he helped to put it out, put it out or helped to put it out, which is fine, but there's an awful lot of people that live right there in a very small area in that housing unit and it could be a very tragic thing if the fire got set and got out of control. I feel there is sufficient evidence to indicate that the  certainly to prove probable cause to believe that the defendant set the fire maliciously, willfully.
Aundray Isaac took the stand in his own defense and was the only witness offered by the defense. Isaac admitted going to Jackson's apartment on the night of the fire. Isaac testified that he was at a bar from 11:00 p.m. until around 1:00 a.m.[2] He then went to Jackson's apartment between 1:00 and 1:30 a.m. Isaac said that he knocked on Jackson's front door, but did not get an answer. He said he had a cigarette in his right hand and lifted the mailbox up with his left hand and started calling her. He then lifted up the towel to look through the window but could not do so because he could not move the towel on the other side of the door. Isaac next went around to Jackson's back door and knocked for five or ten minutes. He said that she then came out of the back door and told him that the front door was on fire. Isaac went into the apartment and put the fire out with the fire extinguisher.
Isaac admitted that he told Jackson not to call the police when she exited the apartment. He said that when he walked away from the front door, he did not know that it was on fire and did not learn of the fire until Jackson came out of her apartment through the back door. Isaac testified that after he extinguished the fire, he stood around for a few minutes and then left. Isaac said that he did not have any reason for not staying around after the fire.
Contrary to the testimony of Jackson, Isaac testified that he did not talk to Jackson through the front door while it was on fire and further said that he did not have any conversation with Jackson through the front door. Isaac said that he guessed the fire was started by his cigarette.[3] Finally, Isaac stated that he did not intentionally start the fire at Jackson's apartment.[4] Isaac stated that if he wanted to get into Jackson's apartment he would have kicked the door in as he had previously done.
After the close of his case, Isaac requested a peremptory instruction which was refused by the trial judge. The jury then retired to consider its verdict. The jury returned with a verdict finding Isaac guilty of first degree arson. Isaac was sentenced on March 26, 1992. He was sentenced to a term of 12 years in the custody of the Mississippi Department of Corrections for the crime of first *907 degree arson. Isaac filed a motion for a new trial, which was denied by the trial judge on April 13, 1992. Thereafter, he filed his notice of appeal to this Court.

III. ANALYSIS.

A. Parties' Contentions.
At the close of the State's case in chief Isaac moved for a directed verdict. This motion was denied by the trial judge. Isaac then requested a peremptory instruction at the close of all evidence which was also denied. On appeal, Isaac assigns the denial of both his motion for a directed verdict and his request for a peremptory instruction as error. In addition, Isaac also argues that the verdict of the jury was against the overwhelming weight of the evidence in that the State failed to prove willfulness or malice as an element of first degree arson.
On the other hand, the State argues that there was more than sufficient evidence presented to find Isaac guilty of first degree arson and that the verdict of the jury should not be disturbed.

B. Applicable Law.
The standard of review that this Court employs for reviewing the denial of a directed verdict and a peremptory instruction are the same:
In judging the sufficiency of the evidence on a motion for a directed verdict or request for peremptory instruction, the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant. Clemons v. State, 460 So.2d 835 (Miss. 1984); Forbes v. State, 437 So.2d 59 (Miss. 1983); Bullock v. State, 391 So.2d 601 (Miss. 1980). If, under this standard, sufficient evidence to support the jury's verdict of guilty exists, the motion for a directed verdict and request for peremptory instruction should be overruled. Brown v. State, 556 So.2d 338 (Miss. 1990); Davis v. State, 530 So.2d 694 (Miss. 1988).
Noe v. State, 616 So.2d 298, 302 (Miss. 1993). See also, Hart v. State, 637 So.2d 1329, 1340-41 (Miss. 1994); Edwards v. State, 615 So.2d 590, 594 (Miss. 1993); Wells v. State, 521 So.2d 1274, 1277 (Miss. 1987).
Isaac also attacks the jury's verdict as being against the overwhelming weight of the evidence in that the State did not prove malice and willfulness as a necessary element of the crime of first degree arson. With regard to challenging a jury's verdict as being against the overwhelming weight of the evidence this Court has said:
In determining whether or not a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial. Malone v. State, 486 So.2d 360, 366 (Miss. 1986); Shive v. State, 507 So.2d 898, 900 (Miss. 1987); and Uniform Criminal Rules of Circuit Court 5.16.
Thornhill v. State, 561 So.2d 1025, 1030 (Miss. 1989). See also, Newsom v. State, 629 So.2d 611, 615 (Miss. 1993); Burrell v. State, 613 So.2d 1186, 1190-91 (Miss. 1993); Nicolaou v. State, 612 So.2d 1080, 1083 (Miss. 1992); Parker v. State, 606 So.2d 1132, 1139-40 (Miss. 1992); Leflore v. State, 535 So.2d 68, 69-70 (Miss. 1988).
Isaac was convicted of first degree arson in violation of Miss. Code Ann. § 97-17-1 (1972) which reads:
§ 97-17-1. Arson  first degree  burning dwelling house or outbuilding.
Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house ... shall be guilty of arson in the first degree, and upon conviction thereof, be sentenced to the penitentiary for not less than two nor more than twenty years.
Miss. Code Ann. § 97-17-1 (1972).
As expressed by the above code section, an essential element of first degree arson is that the burning be willful and malicious. It is this element that Isaac contends was not proven beyond a reasonable doubt by the State in the instant case. Regarding *908 this element, it is stated in Curtis' A Treatise on the Law of Arson:
Sec. 57. Common law rule.  The common law definition of arson  the willful and malicious burning of the property of another  imports two mental elements: willfulness and malice. To constitute common law arson it is essential that the act be done willfully; that is, intentionally, as opposed to accidentally. It must also be done maliciously, but malice is inferred if the burning is done intentionally. Hence, except under unusual circumstances, the only inquiry in respect to intent is whether the accused intentionally set the fire or whether it was of accidental origin ...
Sec. 58. Intent  Generally.  Criminal intent is an essential element of the crime of arson. This may be expressed in statute by use of the word "intentionally," but ordinarily the statutes follow the usage of the common law and use the term "willfully." The word "willful," as used in a statute relating to arson, means "intentional."[5] It implies that the act was done knowingly,  "purposely and intentionally." It means an intent to burn, but not necessarily an intent to destroy. Ordinarily, no particular intent is required other than is denoted by the term "willful."
Sec. 60. Intent  Accidental fire.  The negligent, as opposed to the willful, setting of fires, has, with rare exceptions, not been punished in the criminal courts ... At common law, and under the existing statutes, one cannot be convicted of the offense of arson merely upon proof that by accident or mischance, or even by his negligence, a building has been burned. Any evidence indicating that the fire was of unintentional origin requires that issue to be submitted to the jury ...
Sec. 68. Malice  As element of offense.  Under the common law definition, and under statutes as usually enacted, malice is an element of the offense. If the other elements of the crime are adequately proved, malice may be inferred ...
Arthur F. Curtis, A Treatise on the Law of Arson, §§ 57, 58, 60, 68 (1936). See 5 Am. Jr.2d Arson and Related Offenses § 11 (1962) ("At common law and under statutes which make malice and wilfulness an ingredient of the crime of arson, a particular intent or malice against a person or thing is not essential; it is sufficient to show that the accused was actuated by a malicious motive and that he set the fire wilfully rather than negligently or accidentally.") See also, 6A C.J.S. Arson § 8 (1975).
The State submits that intent may be inferred from Isaac's conduct and the surrounding circumstances. The State cites the case of Wells v. State, 521 So.2d 1274 (Miss. 1987), for this proposition. Wells states "intent may be determined from the acts of the accused and his conduct, and that inferences of guilt may be fairly deducible from all the circumstances." Wells, 521 So.2d at 1277 (quoting Jackson v. State, 254 So.2d 876, 879 (Miss. 1971)).
The State's assessment of Isaac's actions and conduct from which it claims the requisite intent can be inferred may be summarized as follows:
1. Isaac admitted that he was a smoker, thus, it would be reasonable to infer that he would have access to matches or a lighter.[6]
2. Isaac had lived in the apartment previously, therefore, it would be reasonable to infer that he would know the location of the fire extinguisher so that he could extinguish any fire that he started.
3. Isaac wanted to gain entrance to Jackson's apartment and was able to do so as a result of the fire.
4. Isaac asked Jackson not to call the police as she was leaving her apartment.
5. Isaac immediately left the scene after putting out the fire.
6. Isaac's testimony is confusing and unbelievable. *909 Thus, the State concludes, "Under the facts, testimony and circumstances it is not only reasonable to infer, it is obviously clear that defendant intended to set the fire and did. The fact that he put it out does nothing to negate that positive intent he had in initially setting the fire."
In support of his argument, Isaac cites the Court to several cases in which this Court held the evidence to be insufficient to sustain a conviction of arson. One such case is White v. State, 441 So.2d 1380 (Miss. 1983). White was convicted of "setting fire to, and burning, his automobile for the purpose of defrauding the insurer." White, 441 So.2d at 1380. In White, the most damaging evidence came from a witness who testified that he and White had discussed the burning of White's car and that White had asked him to assist in the burning. Id. at 1381. While White's requested peremptory instruction was denied by the trial court, he did not raise this as an issue on appeal. However, the Court noted plain error in the trial court's denial of White's peremptory instruction and reversed the case holding that the State had failed to prove that White was guilty of arson beyond a reasonable doubt. Id.
In Moody v. State, 371 So.2d 408, 409 (Miss. 1979), the only evidence linking the defendant, Moody, with the fire was the testimony of two co-indictees. After noting that the testimony of one of the co-indictees was contradicted, unreasonable, and impeached, and the other co-indictee had an interest in the case from the standpoint of his own guilty plea and further was greatly influenced by law enforcement officials, this Court ruled that the verdict of guilty was contrary to the overwhelming weight of the evidence and discharged the defendant. Moody, 371 So.2d at 410-11.
The Court in Williams v. State, 220 Miss. 800, 72 So.2d 147 (1954), ruled that the testimony of one of the State's witnesses was inadmissible as being hearsay. In the absence of this testimony, none of the State's other witnesses connected the defendant to the burning of the building. Williams, 72 So.2d at 151. Thus, the Court held, "there is not enough evidence to go to the jury on the issue of guilt vel non; that there is no evidence of any logical probative value to connect appellant with the alleged offense; and that therefore she was entitled to her requested peremptory instruction." Id.
In the case of Holloman v. State, 151 Miss. 202, 117 So. 532 (1928), the evidence presented by the State included the fact that there had been "trouble" between Rolan Shows (the person whose property, a barn, was burned) and the defendant or the defendant's father. Holloman, 117 So. at 532. One witness testified that the defendant stated that he was going to burn the barn and that the defendant attempted to get him to aid him in doing so. Id. at 532-33. On the night of the fire, property belonging to the defendant's father, which was normally stored in the barn, was not located in the barn. Id. at 533. Also, tracks located at the rear of the barn, the point of origin of the fire, matched the shoes the defendant was wearing at the time of his arrest. Id. The Court held that the evidence presented in that case was wholly insufficient to sustain the verdict of guilty. Id.
In addition to the above cases, Isaac cites the Court to numerous other arson cases in which this Court held that the evidence was not sufficient to support a conviction. These cases include: Lyle v. State, 193 Miss. 102, 8 So.2d 459 (1942); Rutledge v. State, 171 Miss. 311, 157 So. 907 (1934); Ratcliff v. State, 99 Miss. 277, 54 So. 947 (1911); Bolden v. State, 98 Miss. 723, 54 So. 241 (1911); Strong v. State, 23 So. 392 (Miss. 1898); and Luker v. State, 14 So. 259 (Miss. 1894).
In the instant case, the State presented very little evidence which would tend to prove that Isaac willfully and maliciously started this fire, thus making this case a difficult one.[7] The testimony of all of the *910 witnesses has been detailed in Section II of this opinion.

C. Conclusion.
Considering the evidence summarized herein, this Court is of the opinion that the State failed to prove beyond a reasonable doubt that Isaac "willfully and maliciously" started the fire in question. Accepting as true all of the evidence, and all reasonable inferences therefrom, favoring the State and disregarding that favorable to Isaac, there is insufficient evidence to support the verdict of guilty.[8] The verdict and sentence are reversed and rendered for the trial judge's failure to grant Isaac's motion for directed verdict or his request for a peremptory instruction.
JUDGMENT IS REVERSED AND RENDERED. APPELLANT IS DISCHARGED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] Weekly described an accelerant as anything flammable that ignites easily and causes a fast burn. Examples of accelerant that he mentioned were gasoline, lighter fluid, paint thinner, and anything else that will start immediately and ignite rapidly.
[2] Isaac said that he had three beers to drink that night.
[3] Isaac said that he did not have any matches with him that night. He said that he got a light for his cigarette from some people standing around the basketball court after he left the bar. He also said he threw the cigarette down when he went around to the back door.
[4] Isaac said that he had no reason to intentionally start this fire and that his children were in Jackson's apartment on the night of the fire.
[5] Mississippi's first degree arson statute uses the phrase "wilfully and maliciously." Miss. Code Ann. § 97-17-1 (1972).
[6] However, Isaac stated that he did not have any matches with him on the night of the fire and that he got a light for his cigarette from some people he met after leaving the bar.
[7] Though this point is never mentioned by the Appellant, Isaac, the evidence in this case seems to be wholly circumstantial in that there were no eyewitnesses and no confession. Parker v. State, 606 So.2d 1132, 1141 (Miss. 1992). Though it may be said that Isaac admitted starting this fire, if he did he only admitted that it was an accident. In circumstantial evidence cases "the state is required to `prove the accused's guilt not only beyond a reasonable doubt, but to the exclusion of every other hypothesis consistent with innocence.'" Leflore v. State, 535 So.2d 68, 70 (Miss. 1988) (quoting Guilbeau v. State, 502 So.2d 639, 641 (Miss 1987)). In the instant case, Isaac requested and received a circumstantial evidence jury instruction.
[8] See Burks v. United States, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1, 14 (1978) ("Since we hold today that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, the only `just' remedy available for that court is the direction of a judgment of acquittal.")