KING, J.,
for the Court:
¶ 1. Stacey Lynn Waltman was convicted of sexual battery for which he was sentenced to serve a term of thirty years with five years suspended in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Waltman has appealed and assigned three errors:
*325 I. DID THE TRIAL COURT ERR BY NOT ALLOWING MR. WALTMAN TO PROPERLY CROSS-EXAMINE THE VICTIM IN THIS CASE?
II. DID THE TRIAL COURT ERR BY NOT GRANTING DEFENSE INSTRUCTION D-7, WHICH WOULD HAVE ALLOWED THE JURY TO BELIEVE THAT THE VICTIM MAY HAVE CONSENTED TO HAVE SEXUAL RELATIONS WITH MR. WALT-MAN?
III. WAS THE VERDICT OF SEXUAL BATTERY IN THE TRIAL COURT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL?
¶ 2. Finding no error, this Court affirms the circuit court judgment.
FACTS
¶ 3. Ms. Smith[1] shared a house with her mother, sister, and her sister’s husband, Stacey Waltman. On June 8, 1991, at approximately 8:00 p.m., Waltman and Ms. Smith’s sister argued. Ms. Smith witnessed the argument and tried to call for police assistance, but Waltman pulled the phone cord from a wall in the house. The police traced the call and called back to ascertain directions to Ms. Smith’s house. Upon the arrival of the police, the dispute was settled.
¶ 4. At approximately 4:00 a.m. the next morning, Ms. Smith awoke to an unusual sound in her kitchen. She got out of bed and walked into the kitchen to find Walt-man standing near the refrigerator. Walt-man approached her and pressed a screwdriver against her breast. He forced her into her bedroom and onto the bed. The two struggled, but Waltman was successful in removing Ms. Smith’s underwear. He then forced her into her mother’s room where he coerced her to engage in oral and vaginal intercourse. After threatening to harm her family if she spoke of this incident, Waltman left the house.
¶ 5. After Waltman’s departure, Ms. Smith showered and waited for her brother to arrive. When he arrived later that morning, she explained that Waltman had sexually assaulted her. At this point, Ms. Smith’s brother and sister took her to the hospital where a rape test kit was completed.
¶ 6. Personnel at the hospital reported the incident. Detective Bob Carew of the Jackson County Sheriffs Department arrived at the hospital to investigate Ms. Smith’s allegations. After taking her statement, he went to her house and retrieved the sheets from her bed and her mother’s bed, her underwear and nightgown, and the screwdriver.
¶ 7. At the request of Detective Carew, Dr. Michael West, a forensic odontologist, took pictures of a bite mark near Ms. Smith’s vaginal area and a mark on her left hand. Ms. Smith alleged that Walt-man inflicted these marks during the sexual battery.
¶ 8. Dr. West took impressions of Walt-man’s teeth and compared them to the bite mark. It was his opinion that Waltman’s teeth caused the bite mark. Dr. West also compared the mark on Ms. Smith’s hand with the screwdriver. He determined that the screwdriver was consistent with the wound pattern found on her hand.
¶ 9. Waltman was subsequently indicted for burglary and sexual battery. He denied all charges, claiming that Ms. Smith had allowed him into her portion of the house and consented to having sexual intercourse. A trial was held and the jury convicted Waltman only of sexual battery. Waltman’s motion for new trial was denied. He now appeals his conviction and sentence.
ISSUES
I. DID THE TRIAL COURT ERR BY NOT ALLOWING MR. WALTMAN *326 TO PROPERLY CROSS-EXAMINE THE VICTIM IN THIS CASE?
¶ 10. Waltman contends that the trial court improperly denied him the opportunity to cross-examine Ms. Smith regarding her behavior of dating married men. To support his effort to cross-examine Ms. Smith, Waltman’s attorney made the following proffer of evidence outside the presence of the jury:
Q: When you were talking to your brother-in-law, Stacey Waltman, and you were trying to talk him out of what was going to occur or what you thought was going to occur, what did you tell him?
A: What you mean, what are you talking about — about sex and all that?
Q: Yes. Did you tell him that you did not wish to have sex with him because he was a married man?
A: Something like that. I think I said that.
Q: You didn’t say because he was married to your sister; you said because he was a married man. Right?
A: (pause).
Q: Isn’t that correct?
A: Yes, I think.
Q: And, as a matter of fact, Bobby who you met and had Stacey Waltman take you to was also married, was he not?
A: He was getting — He was divorced. That’s what he told me.
Q: All right. And as a further point of fact, the person that you were living with and now live with was also a married man until he got his divorce. Right?
A: We wasn’t dating.
Q: But wasn’t he married when you were seeing him?
A: I was seeing the whole family.
Q: Okay.

Law

¶ 11. Mississippi Rule of Evidence 412 prescribes that, in a criminal case in which a person is accused of a sexual offense against another person, reputation or opinion evidence of the past sexual behavior of an alleged victim of such sexual offense is not admissible. However, such evidence is admissible if it is offered by the accused upon the issue of whether the accused was or was not, with réspect to the alleged victim, the source of semen, pregnancy, disease, or injury.

Analysis

¶ 12. Miss. Rule of Evidence 412 provides four exceptions to the general rule that past sexual behavior of an alleged victim is inadmissible; the accused must offer this evidence to prove that he was or was not, with respect to the victim, the source of semen, pregnancy, disease, or injury. A close reading of the previous colloquy reveals that Waltman sought to impeach evidence concerning sexual behavior. Though he argues that his inquiry did not consist of questions regarding past sexual behavior, this Court finds that Ms. Smith’s dating of married men was a subject that ultimately fell within the context of Rule 412. Rule 412 prohibits the use of such testimony in this matter. The trial court properly denied cross-examination in this regard.
II. DID THE TRIAL COURT ERR BY NOT GRANTING DEFENSE INSTRUCTION D-7, WHICH WOULD HAVE ALLOWED THE JURY TO BELIEVE THAT THE VICTIM MAY HAVE CONSENTED TO HAVE SEXUAL RELATIONS WITH MR. WALT-MAN?
¶ 13. Waltman contends that the trial court improperly allowed an amendment to defense instruction D-7. Prior to its amendment, Instruction D-7 read, in pertinent part,:
The Court instructs the jury that if you believe the evidence is that, [Ms. Smith] consented to have sexual relations or may have consented to have sexual relations with the Defendant Stacey L. Waltman, without any physical force or *327 threats, then it is your duty to find the Defendant “not guilty” of sexual battery.
The amended instruction deleted the phrases, “may have consented to have sexual relations” and “without any physical force or threats”. Waltman objected to the removal of the former phrase.

Lmv

¶ 14. A person is guilty of sexual battery if he or she engages in sexual penetration with another person without his or her consent. Miss.Code Ann. § 97-3-95 (Supp.1998).

Analysis

¶ 15. The statute defining sexual battery is unambiguous. The act of sexual battery is committed when a person is sexually penetrated without his or her consent. Miss.Code Ann. § 97-3-95(1)(a)(Supp.1998). The language “may have consented” was a misstatement of the law. The trial court properly deleted that language.
III. WAS THE VERDICT OF SEXUAL BATTERY IN THE TRIAL COURT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL?
¶ 16. Waltman contends that the evidence in the case at bar is against the overwhelming weight of the evidence.

Law

In determining whether or not a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial.
Isaac v. State, 645 So.2d 903, 907 (Miss.1994).

Analysis

¶ 17. Miss.Code Ann. § 97-3-95 (Supp. 1998) defines sexual battery as an act of sexual penetration with another person without his or her consent. Waltman admitted that he engaged in sexual intercourse with Ms. Smith. Though he contends that it was consensual, Ms. Smith testified that it was without her consent. Ms. Smith’s testimony, standing alone, was sufficient evidence for a jury to find Walt-man guilty of sexual battery. This Court does not find that the verdict was against the overwhelming weight of the evidence.
¶ 18. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS WITH FIVE YEARS SUSPENDED AND FIVE YEARS PROBATION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND SOUTHWICK, JJ., CONCUR.

. In the interest oi the victim’s privacy, her name has been changed.