# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01128-SCT

*AUNDRAY ISAAC a/k/a AUNDRAY RADELL ISAAC*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/14/2014 |
| TRIAL JUDGE: | HON. DAVID H. STRONG, JR. |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID NEIL McCARTY |
| | GRAHAM PATRICK CARNER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALISON O'NEAL McMINN |
| | MALISSA WINFIELD |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 03/31/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KITCHENS AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. Aundray Isaac filed his complaint against the State of Mississippi on June 27, 2012, in the Circuit Court of Pike County, seeking compensation for wrongful conviction and imprisonment. The trial court found in favor of the State and dismissed Isaac's complaint with prejudice. Aggrieved, Isaac appeals. We affirm.

## FACTUAL BACKGROUND

¶2.    During the early morning hours of March 11, 1991, a towel draped over the front door of Shannon Jackson's apartment caught fire.  The towel had been placed there purposefully for privacy, as covering the windows at the top of the door prevented bypassers from seeing up the interior stairwell just beyond the door.  That night, Jackson was at home and upstairs with her and Isaac's two young children.  Isaac lived at the apartment with Jackson but had spent most of the night at issue away from the apartment.  He knocked on the door after midnight, but, though she was home, Jackson refused to let him in.  Jackson testified that the two of them had agreed that "he wasn't going to be coming in after 12:00.  If he was going to continue to live there, he was going to be in before 12:00 or no later than 12:00."

¶3.    Isaac testified at his wrongful conviction trial that he set the towel on fire, but he maintained that it was an accident.  At his criminal trial, as well, he testified that the fire was an accident.  The accounts recounted by Isaac at the two trials differ, as discussed in further detail *infra*, but the fire was set by Isaac either attempting to light a cigarette or with an already-lit cigarette that came into contact with the towel.  Jackson soon became aware of the smoke and fire and called the authorities, who promptly responded.  The fire already was out by the time the fire department arrived; Isaac had entered the apartment by the back door and used kitchen's fire extinguisher to put out the flames.

¶4.    The fire had charred the front door but otherwise left the door functional. Jackson and her children were able to stay in the home that night.  After an interview with Jackson the following morning, Detective James Carruth Jr. executed an arrest warrant for Isaac, who

2

was arrested a few days later. A grand jury returned an indictment against Isaac on October 15, 1991, charging him with first degree arson:

> Aundray Radell Isaac, . . . on or about the 11th day of March, 1991, . . . did wilfully, unlawfully, feloniously, and maliciously set fire to that certain apartment type dwelling house owned by the United States Department of Housing and Urban Development and operated by the City of McComb City, McComb, Mississippi, more particularly described as Building 11, Apartment #4, Burgland Heights, McComb, Mississippi, and occupied by Shannon Jackson, contrary to and in violation of Section 97-17-1 of the Mississippi Code of 1972, and against the peace and dignity of the State of Mississippi.

Isaac's criminal trial took place on March 18, 1992. A jury found him guilty as charged and the trial court sentenced him to twelve years in prison, to run concurrently with an unrelated, suspended sentence.

¶5. Isaac appealed and we reversed. *Isaac v. State*, 645 So. 2d 903 (Miss. 1994). We determined that the State had failed to prove the malice and willfulness elements of first-degree arson beyond a reasonable doubt and therefore had produced insufficient evidence to support Isaac's conviction. *Id.* at 909-910. The Court reversed and rendered Isaac's conviction and discharged him from the custody of the Mississippi Department of Corrections. *Id.* at 910. The State filed a motion for rehearing, which was denied, but Isaac remained in custody until the case mandated. Between March 26, 1992, and December 15, 1994, Isaac spent two years and eight months, or 995 days, in prison.

¶6. In 2009, the Mississippi Legislature enacted the Mississippi Wrongful Conviction Act (MWCA). *See* Miss. Code Ann. §§ 11-44-1 to -15 (Rev. 2012). As Isaac had been "convicted, incarcerated and released from custody prior to July 1, 2009," he was required

3

to file his action for compensation "not later than June 30, 2012." Miss. Code Ann. § 11-44-9. He timely filed his complaint on June 27, 2012. In his complaint, Isaac alleged that his case met every requirement of the MWCA and that he was entitled to the statutory compensation of $50,000 per year, prorated for the eight months of the third year of his incarceration.

¶7. The trial court entered an Agreed Scheduling Order on November 20, 2013. Isaac filed a motion to strike the State's amended expert designation, which the trial court granted. Trial on Isaac's MWCA claim took place on June 20, 2014. Before calling witnesses, the State and Isaac stipulated that Isaac's case fulfilled six of the seven elements of a MWCA claim. The only issue for trial, therefore, was "whether Mr. Isaac can prove by a preponderance of the evidence, more likely than not, that he did not commit the felony of arson for which he was sentenced, or that the acts or omissions which he did commit . . . did not constitute a felony." *See* Miss. Code Ann. § 11-44-7(1)(b). Isaac testified for himself, and also called Jackson and Warren Weekly, a firefighter who had responded to Jackson's 911 call, as his witnesses.

¶8. At the close of Isaac's case, the State moved for a directed verdict in its favor. The court denied the motion, stating that Isaac had made a *prima facie* MWCA claim. The State then called its witnesses: Joyce Magee, the public housing manager for Jackson's apartment unit; Weekly, recalled by the State; and Carruth. The court then recessed.

4

¶9.     On July 15, 2014, the trial court rendered its judgment in favor of the State and issued an accompanying opinion. The trial court stated that, "based upon the testimony of numerous witnesses as well as exhibits offered and received[,] that Isaac has failed to meet his burden of proof that he did not intentionally, willfully and maliciously set fire to the towel outside of Jackson's apartment." In particular, the trial court stated that it found Isaac's version of events "incredible."

¶10.    Isaac timely perfected his appeal. Isaac asserts two errors: that the trial court erred by not addressing the element of "malice," and that the trial court erred by finding that Isaac had failed to prove that he had set the fire unintentionally.

## ANALYSIS

¶11.    The Mississippi Legislature established the elements of a MWCA claim. In order to succeed, a claimant must prove by a preponderance of the evidence that:

> (a) He was convicted of one of more felonies and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence; and
>> (i) He has been pardoned for the felony or felonies for which he was sentenced and which are the grounds for the complaint and the pardon is based on the innocence of the claimant which must be affirmatively stated in the pardon; or
>> (ii) His judgment of conviction was reversed or vacated; and
>>> 1. The accusatory instrument was dismissed or nol prossed; or
>>> 2. If a new trial was ordered, he was found not guilty at the new trial; and
>
> (b) He did not commit the felony or felonies for which he was sentenced and which are the grounds for the complaint, or the acts or omissions for which he was sentenced did not constitute a felony; and
> (c) He did not commit or suborn perjury, or fabricate evidence to bring about his conviction.

5

Miss. Code Ann. § 11-44-7(1).  As stated above, the parties stipulated that Isaac fulfilled all of the subsections save for subsection (b).  Notably, unlike a criminal trial, the plaintiff in a civil action seeking damages from the State for his wrongful conviction bears the burden of proof.  Miss. Code Ann. § 11-44-7(1).

## I. The trial court did not err when it failed to explicitly discuss the "malice" element of arson.

¶12.    Isaac first argues, that because the trial court failed to address the required element of "malice" in the arson statute, the trial court's judgment must be reversed and judgment rendered in his favor.  Further, Isaac claims that there was never any evidence at all that he acted maliciously.  As statutory interpretation is a question of law, the Court reviews the assertion of error de novo.  *Scott Addison Constr., Inc. v. Lauderdale Cty. Sch. Sys.*, 789 So. 2d 771, 773-74 (¶8) (Miss. 2001).

¶13.    In 1992, the language of the statute at issue read[1] as follows:

> Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house . . . shall be guilty of arson in the first degree, and upon conviction thereof, be sentenced in the penitentiary for not less than two nor more than twenty years.

Miss. Code Ann. § 97-17-1 (as cited in *Isaac*, 645 So. 2d at 907).  Isaac insists that the statute must be read conjunctively, that is, that both willfulness and maliciousness are

---

[1] The Mississippi Legislature has amended the arson statute since Isaac's 1992 conviction, but the version under which Isaac was convicted controls the analysis of a MWCA claim. *See* Miss. Code Ann. § 11-44-7(1)(b), stating that the claimant must prove that he "did not commit the felony or felonies *for which he was sentenced and which are the grounds for the complaint*. . . ." (Emphasis added.)

independent, separate elements of first-degree arson. Isaac cites **Salinas v. United States**, 522 U.S. 52, 57 (1997), to support his argument: "Courts in applying criminal laws must follow the plain and unambiguous meaning of the statutory language."

¶14. The State responds by stating that the Court addressed this very issue in **Dickerson v. State**, 175 So. 3d 8 (Miss. 2015). In that case, the Court affirmed David Dickerson's convictions for capital murder, arson, and armed robbery. Discussing the sufficiency of the evidence, particularly whether Dickerson's setting of the fire was willful and malicious, the Court stated that

> [a]n arson is willful when the fire is intentionally set, and malice is inferred from wilfullness. *See* **Isaac v. State**, 645 So. 2d 903, 908 (Miss. 1994); **Barnes v. State**, 721 So. 2d 1130, 1134 (Miss. Ct. App. 1998).

**Dickerson**, 175 So. 3d at 20 (¶35). Therefore, according to the State, "the statute does not require a separate finding of malice, as intent is adequate. Here, because the trial court found that Isaac did not disprove his intent, it is inferred that he failed to disprove malice."

¶15. Isaac attempts to distinguish **Dickerson** from his own case by highlighting the heinousness of Dickerson's actions. Dickerson killed Paula Hamilton, poured an accelerant over her body and the trailer in which she lived, and set it on fire. **Dickerson**, 175 So. 3d at 12-13. Isaac argues that the "horrifying scenario" in **Dickerson** is "miles away from the actions of Aundray Isaac."

¶16. The State, however, is correct, and it would have been correct even before we decided **Dickerson**. In the very same opinion with which we reversed Isaac's conviction, we quoted

7

*A Treatise on the Law of Arson*, Section 68: "Under the common law definition, and under statutes as usually enacted, malice is an element of the offense. If the other elements of the crime are adequately proved, malice may be inferred." *Isaac*, 645 So. 2d at 908 (quoting Arthur F. Curtis, *A Treatise on the Law of Arson*, § 68 (1936)). Additionally, we quoted *American Jurisprudence*: Where malice and willfulness are ingredients "of the crime of arson, a particular intent of malice against a person or thing is not essential; it is sufficient to show that the accused was actuated by a malicious motive and that he set the fire wilfully rather than negligently or accidentally." *Isaac*, 645 So. 2d at 907 (quoting 5 Am. Jur. 2d *Arson and Related Offenses* § 11 (1962)). Our citation to **Isaac** in **Dickerson**, see *supra* ¶ 14, reaffirmed that, while the State in an arson prosecution has the burden to prove both malice and willfulness, a fact-finder may—but is not required to—infer malice from evidence of willfulness. For example, the State hardly could argue it proved malice with nothing more than evidence of an intent to light a candle or gas stove.

¶17.    Additionally, the trial court cited the MWCA in its opinion and stated that the burden was on Isaac to prove that he did not commit the felony for which he was convicted, or that his actions or omissions did not constitute a felony. *See* Miss. Code Ann. § 11-44-7. After providing a concise and accurate summary of the facts to which Isaac testified, the trial court concluded that it perceived Isaac's testimony that the fire was set "accidentally" to be "incredible," that is, that the fire was willfully set. "[T]he [c]ourt finds that if Isaac did unintentionally set the fire in attempting to light his cigarette, he could have immediately put

8

the fire out with his hand." The trial court clearly determined that Isaac intentionally set the fire, and that he failed to prove that he did not maliciously set the fire. "The Court finds based upon the testimony of numerous witnesses as well as exhibits offered and received that Isaacs has failed to meet his burden of proof that he did not intentionally, willfully, and maliciously set fire to the towel outside of Jackson's apartment."

## II. The trial court did not err when it found that Isaac set the fire intentionally.

¶18. Isaac next argues that the trial court erred when it found that the fire had been set intentionally, as "the great volume of evidence at trial was that the fire was accidental." Isaac argues that he quickly extinguished the fire and that his testimony was undisputed by any of the witnesses or evidence and therefore must be taken as true. *See **Reeves Royalty Co., Ltd. v. ANB Pump Truck Serv.***, 513 So. 2d 595, 599 (Miss. 1987) ("Undisputed testimony, which is not so unreasonable as to be unbelievable, must be taken as truth.")

¶19. The trial court's determination that Isaac had failed to prove facts to show he did not commit arson was a finding of fact, so the Court affords it great deference on appeal. "'A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor,' and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." ***City of Jackson v. Perry***, 764 So. 2d 373, 376 (¶ 9) (Miss. 2000) (quoting ***Puckett v. Stuckey***, 633 So. 2d 978, 982 (Miss. 1993)); *see also **Hymes v. State***, 121 So. 3d 938, 943-44 (¶18) (Miss. Ct. App. 2013) (applying the above-quoted standard of review to an appeal of a MWCA claim). The Court will not disturb

9

the findings of a trial judge unless the Court determines the findings "are manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Perry*, 764 So. 2d at 376 (citing *Bell v. City of Bay St. Louis*, 467 So. 2d 657, 661 (Miss. 1985)).

¶20. At the civil trial, Isaac testified that he accidently started the fire when he stepped between the screen door and the front door to light a cigarette. He said that he tried to put it out with his hand, and then he got the fire extinguisher. He testified that he immediately worked to extinguish the fire because his children were in the apartment and he didn't want anything to happen to them. The State then confronted him with his testimony from his criminal trial. There, Isaac had testified that he already had been holding a lit cigarette in his right hand when he lifted the mailbox flap with his left hand and began calling to Jackson to let him in. According to his criminal trial testimony, he didn't notice the towel was on fire. Instead, he went around to the back of the apartment and "knocked on the back door for five or ten minutes" until Jackson opened the back door and said the door was on fire. At that point, he entered the apartment, took the fire extinguisher, and put out the fire. He stated at his criminal trial that he did not know before he entered the apartment from the back that the towel on the front door had caught fire. On cross-examination, when asked by the prosecutor, "you never lit a match?", Isaac responded that his "[c]igarette was lit when [he] walked up there."

¶21. Additionally, Jackson's testimony at Isaac's MWCA hearing differed from the testimony that she gave at Isaac's criminal trial. At Isaac's criminal trial, the couple had

10

welcomed a third child and still lived together. Jackson testified in 1992 that she believed that the fire had been an accident. As of 2013, Isaac and Jackson are no longer romantically involved, their children are grown, and the former partners do not remain in close communication. With regard to the night of the fire, Jackson testified that she and Isaac had agreed that if he came home after midnight, she would not let him in. Isaac had arrived at the apartment after midnight, and Jackson testified that because of that, she told him to leave and went back upstairs. In contrast to Isaac's criminal trial, Jackson testified at Isaac's civil trial that, in fact, she and Isaac had been arguing in the weeks leading up to the fire, and she had called the police several times. She stated that, at one time, she had discovered Isaac hiding under her bed after she had kicked him out; another time, Isaac had gained reentry to the apartment by using a coat hanger through the mail slot. At the time of the MWCA trial, Jackson affirmatively testified: "I know he intentionally set it because he was abusive in, you know, in our relationship." In 1991, she had given a similar statement to police the night of the fire and to Detective Carruth when he came to interview her the next day. However, as she did not actually see him set the fire, the trial court clarified that the statements were "speculation, for the record."

¶22. "Conflicting testimony in the record is to be resolved by the trier of fact." ***Scott Addison Constr.***, 789 So. 2d at 773 (¶8). In its opinion and order, the trial court noted that "there is significant ground between the State's inability to prove beyond a reasonable doubt that Isaac intended to set the fire and Isaac's ability to prove by a preponderance of the

11

evidence that he did not intend to set the fire." As noted above, the trial court stated that he found Isaac's account of how the fire started "incredible" and that, if the fire had been set accidentally, Isaac "immediately could have put the fire out with his hand. In that event it would have been unnecessary to call emergency personnel or for Jackson and the couple's children to flee the apartment." Though Isaac argues that his testimony was indeed credible, the credibility of witnesses, and the "weight and worth" of the conflicting testimony, lies with the trial judge when he sits without a jury in a bench trial. *Scott Addison Constr.*, 789 So. 2d at 773, 776 (¶8); *see also* *Rice Researchers, Inc. v. Hiter*, 512 So. 2d 1259, 1265 (Miss. 1987). Given our deferential review, we cannot say the trial judge erred by finding that Isaac's story was not believable, especially when Isaac's narrative varied between the civil and criminal trials, and Jackson testified to establish his intent. We also note that, while Isaac eventually extinguished the fire, that does not necessarily mean that he did not intentionally set it and then regretted his decision or changed his mind.

¶23. A question of fact was before the trial court: whether Isaac intentionally set the fire to Jackson's door on the night of March 11, 1991. Because of the nature of the action, Isaac bore the burden of proving he did not by a preponderance of the evidence. *See* Miss. Code Ann. § 11-44-7(1). The trial judge heard testimony and reviewed evidence, as outlined in its three-page opinion. The evidence conflicts in places, as does the testimony, but substantial, credible, and reasonable evidence exists within the record to support the trial judge's finding that Isaac failed to "prove by a preponderance of the evidence that he did not

12

commit the crime" of arson as required by the Mississippi Wrongful Conviction Act. We therefore hold that the assignment of error is without merit.

## CONCLUSION

¶24.    Isaac and the State stipulated to six of the seven elements of a MWCA claim, leaving for trial only the issue of whether Isaac did not commit the felony of arson, or that his acts or omissions did not constitute the felony of arson. *See* Miss. Code Ann. § 11-44-7(1). For the civil action, Isaac carried the burden of proof, and the trial court determined that he failed to meet his burden. Because substantial evidence supported both the trial court's finding that Isaac intentionally set the fire which led to his incarceration and its finding that Isaac failed to prove the absence of malice, we hold that the trial court committed no error in finding in favor of the State.

¶25. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING, MAXWELL AND BEAM, JJ., CONCUR.**