HOLLOMAN *v.* STATE.*

(Division A. June 11, 1928.)

[117 So. 532. No. 27211.]

---

*Corpus Juris-Cyc. References: Arson, 5CJ, p. 580, n. 16.

*Haralson & Hall,* for appellant.

204

*Rufus Creckmore,* Assistant Attorney-General, for the state.

McGOWEN, J. The appellant, Lorenz Holloman, was indicted and convicted of the crime of arson, and was sentenced to serve a term of one year in the Industrial Training School.

The essential facts of the case are that, on the night of November 1, 1928, the barn of Rolan Shows, a farmer, was destroyed by fire, which fire was discovered by Mr. Shows about two o'clock in the morning. At the time the fire was discovered, the barn had burned to such extent that it, together with its contents, the live stock and farming implements, were destroyed.

At the time of the fire, Mr. Shows had insurance in the amount of one thousand five hundred dollars, and afterwards collected one thousand one hundred fifty dollars of said insurance.

At the time of the fire, his wagon, his automobile, and one of his mules, named Maud, were not in the barn. The wagon was loaded with pine knots, his son was off on a trip in the automobile, and the mule was in the pasture.

There was no effort on the part of the state to show any unusual noise or circumstance connected with its burning, or just how the barn caught on fire.

The appellant was a tenant on Shows' farm. He lived in a house about sixty yards from the barn, on the opposite side of the road. There was some trouble between Shows and the appellant, or the appellant's father, with reference to the right of the father of appellant to remove some peas. A witness testified that, on Monday before the fire, appellant said to him that he was "going to burn the house or barn of Mr. Shows in order to get even," that Shows had beat him out of his crop, and that appellant attempted to get him to aid him in the burning of the house or barn.

At the time of the fire, appellant's father had moved from Shows' land, and was living at another place. On the night of the fire, the property of appellant's father (consisting of a horse, a cow and calf, a buggy and harness), which was usually kept in the barn, was not in the barn, but was in the lot somewhere.

The evidence shows that the fire originated in the rear of the west end of the barn; that there were some tracks there, made by a person wearing a peculiar shoe, run over on the side, and a worn place in the center of the sole. Bloodhounds followed this track for about two miles, then lost it; picked it up again, then followed it into the village of Ovette, where the trail was lost at the colored waiting room of the railroad station. There was ample testimony that the track found near the rear of the barn compared favorably with the shoe track made by the defendant, of the shoes which the defendant had on when he was arrested.

After the defendant was arrested, he was carried to the home of Mr. Shows, and was, by the sheriff, led around through a group of perhaps one hundred persons, and then the dogs were turned loose. They followed that trail to within ten or fifteen feet of the defendant, when they were called off by their owner. This testimony was not objected to.

The defendant offered an *alibi* as his defense. He showed by several witnesses that he went to his grandfather's home about four o'clock in the afternoon of the day before the fire, and thereafter rode to the home of Will Strickland, nine miles from the scene of the fire, with his grandfather and several others; that he remained at Will Strickland's home that night, went to bed, and slept in bed with two male relatives; that he was aroused about three or three thirty o'clock in the morning, ate breakfast with the family, and assisted in loading the furniture of Will Strickland, with a view of moving it.

The appellant testified that, on Sunday morning, before the fire, he exchanged shoes with the witness who testified to the threats, and that the shoes he was wearing when the sheriff arrested him were the shoes received by him in exchange with the witness. He further testified that he lived fifty or sixty yards from the barn of Mr. Shows, and that he frequently went all over his place. The dogs did not trail to him from the scene of the crime, and, although the dogs were carried to his father's home, they did not trail him there.

The evidence in the case is wholly insufficient to sustain the verdict. Circumstance for circumstance, such as is urged by the owner of the barn against the defendant, might be urged against the owner, if, indeed, the barn was set fire to or burned by criminal agency.

*Reversed and remanded.*