**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2001-CT-01223-SCT**

*DONALD WADE MILLER*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 07/27/2001 |
| TRIAL JUDGE: | HON. GEORGE B. READY |
| COURT FROM WHICH APPEALED: | DeSOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES W. AMOS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | ANN H. LAMAR |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART, AND THE JUDGMENT OF THE TRIAL COURT IS REINSTATED AND AFFIRMED - 06/17/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Donald Wade Miller was accused of intentionally setting fire to his trailer and was convicted of arson in the DeSoto County Circuit Court. He was sentenced to a term of one year in the custody of the Mississippi Department of Corrections followed by ten years of supervised probation.  Aggrieved by his conviction, Miller appealed. The Court of Appeals affirmed the conviction, but reversed and remanded for

the limited purpose of correcting that portion of the sentence which requires post-release supervision for a period of excess of five years. *Miller v. State*, 856 So. 2d 420, 425 (Miss. Ct. App. 2003).[1]

¶2.     Miller's motion for rehearing was denied on June 10, 2003, and he timely filed the instant petition for certiorari on June 23, 2003. This Court granted certiorari by an order entered September 25, 2003. *Miller v. State*, 859 So. 2d 392 (Miss. 2003). Finding no error in the conviction and sentence, we affirm in part, and reverse in part, the judgment of the Court of Appeals and reinstate and affirm in toto the judgment of the Circuit Court of DeSoto County.

## FACTS

¶3.     The following factual background was recited by the Court of Appeals:

> At approximately 2:49 p.m. on February 29, 2000, the Love Volunteer Fire Department received a report of a fire at 3789 Jaybird Road, Hernando, Mississippi, the residence of Donald Wade Miller. Upon arrival, Sam Witt of the Hernando Fire Department observed smoke coming from the roof on the right front side of the trailer home.
>
> DeSoto County Deputy Fire Marshall Mike Hancock was called to investigate the matter and arrived at approximately 4:00 p.m. with a canine trained to sign for accelerants or flammable liquids. Shortly thereafter, Miller returned home, and at the request of Officer Hancock consented to a search of the property. Officer Hancock allowed his trained canine to search the property for accelerants. The canine signaled the presence of an accelerant in the center of the couch. Photographs were entered into evidence of the couch and the canine's search.
>
> At trial, Mike Lynchard, a custodian of records at BellSouth Telecommunications, testified that a two minute call from Miller's unlisted number at the trailer home was made at 2:38 p.m. on the day of the incident to a Memphis phone number. Lynchard stated that he did not know to whom the Memphis number was listed nor who made the call to that number.
>
> John Anderson, an acquaintance of Miller, testified that when he drove by Miller's trailer, he "noticed smoke coming from the trailer." He slowed down and noticed fire

---

[1]As will be revealed later in this opinion, the Court of Appeals mistakenly used the terms "supervised probation" and "post-release supervision" interchangeably.

"through the window of the trailer." Anderson stopped, called 911 to report the fire at approximately 2:49 p.m., and moved Miller's dog from the yard.

Geniene Bowdre, who lived across the street from Miller, testified that on the day of the incident, she saw a vehicle coming out of one of the driveways, either Miller's or the one next to him, but she was not sure. Then, she saw smoke coming from the trailer.

Sam Lauderdale, a State Farm Insurance agent, testified that Miller's mother is an employee of his and that he "got a telephone call that Donnie's home was on fire. And a few minutes later, he (Miller) pulled into the parking lot and came into the office or came up the office steps, and I walked out and said, '[w]e've gotten a call that your home is on fire.' And he turned around and left."

Bradley Schinker, the State's fire investigator expert, testified that when he came to the east side of the living room, he noticed that the couch was almost burned out in the center and that "the fire started in this area." Schinker also indicated that he found no faulty wiring after inspecting the trailer. He testified that smoking was ruled out and that he determined this was some type of intentional act.

Lee James, a claims representative for State Farm Insurance, testified that she interviewed Miller, who admitted that he was a smoker but denied being on his couch smoking the day of the fire.

At the conclusion of the State's case, Miller moved for a directed verdict claiming that the State had failed to prove beyond a reasonable doubt that he had committed arson. This motion was denied.

Miller testified that he did not intentionally start the fire. He stated that he might have accidentally started the fire, but did not state how it may have accidentally occurred.

Miller's sister, Darlene Ellis, testified that she owned the couch prior to giving it to her brother. She stated that her boys spilled gun cleaning solvent on the couch approximately three months prior to it being given to Miller.

Miller requested a peremptory instruction which was denied by the trial court. Miller was found guilty and sentenced to one year in the custody of the Mississippi Department of Corrections followed by ten years of post-release supervision for the purpose of insuring payment of restitution in the amount of $51,255.91 to State Farm.

Miller filed a motion for JNOV, or in the alternative, a motion for a new trial, which was denied.

*Miller*, 856 So.2d at 421-22.

¶4.     On appeal, the Court of Appeals held that although the evidence presented in Miller's case was purely circumstantial, "the record contain[ed] substantial evidence from which the jury could conclude that Miller was guilty of arson." *Id.* at 425. Therefore, the Court of Appeals affirmed Miller's conviction. The

Court of Appeals, however, reversed and remanded the sentence, finding that the trial court improperly exceeded the maximum years allowed by statute for supervised probation.

## DISCUSSION

¶5.     Miller asserts that the trial court erred in (1) failing to sustain his motions for directed verdict made both at the close of the State's case-in-chief and at the conclusion of the trial; (2) failing to give a peremptory instruction in his favor; and, (3) failing to find via post-trial motions that the verdict of the jury was contrary to the law and the weight of the evidence.

¶6.     When considering claims of trial court error in the denial of a motion for a directed verdict or a denial of a peremptory instruction, our standard of review is the same. We must judge the sufficiency of the evidence by accepting as true all evidence, as well as all reasonable inferences which may drawn from the evidence, in the light most favorable to the State (the non-moving party), and in so doing, if there exists in the record evidence sufficient to support the jury's guilty verdict, we are constrained as a matter of well-established law to uphold the trial court's denial of a motion for directed verdict and/or peremptory instruction. *Robert v. State*, 821 So.2d 812, 817 (Miss. 2002); *Isaac v. State*, 645 So.2d 903, 907 (Miss. 1994); *Clemons v. State*, 460 So.2d 835, 839 (Miss. 1984).

¶7.     In addressing Miller's challenge to the weight of the evidence, our standard of review is likewise clear.

> Our scope of review is well established regarding challenges to the weight of the evidence issue. Procedurally, such challenges contend that defendant's motion for new trial should have been granted. *Miss. Unif. Crim. R. of Cir. Ct. Prac.* 5.16.[2] The decision to grant a new trial rests in the sound discretion of the trial court, and the motion should not

---

[2]This rule is now cited as URCCC 10.05.

be granted except to prevent "an unconscionable injustice." **Wetz v. State**, 503 So.2d 803, 812 (Miss. 1987).

**Jones v. State**, 635 So.2d 884, 886 (Miss. 1994).

¶8.     The Court of Appeals found the following evidence to be consistent with the guilty verdict of arson:

> (1) Miller was the sole occupant of the trailer, (2) a telephone call was made from the trailer approximately ten minutes before the fire was reported, (3) Miller was the last person known to be at the trailer, (4) a car was seen leaving the vicinity of Miller's trailer shortly before the fire, (5) the fire was started deliberately, (6) Miller was at home between 2:38 p.m. and 2:40 p.m., (7) the fire was reported at approximately 2:49 p.m., and (8) a call was made from Miller's trailer at approximately 2:38 p.m.

**Miller**, 856 So. 2d at 423. While the evidence of guilt in the case sub judice was no doubt purely circumstantial, this does not vitiate an otherwise lawful verdict. **Walton v. State**, 642 So.2d 930, 932 (Miss. 1994). There were conflicts in the evidence which unquestionably had to be resolved by the jury. **Groseclose v. State**, 440 So.2d 297, 301 (Miss. 1983). Therefore, the Court of Appeals and the trial court were correct in determining that the verdict rendered by the jury was not contrary to law nor was it against the weight of the evidence.

¶9.     Regarding the sentence imposed by the trial court, the Court of Appeals has mistakenly used the terms "supervised probation" and "post-release supervision" interchangeably. Note by way of example the following excerpts from the opinion of the Court of Appeals: "[Miller] was sentenced to a term of one year in the custody of the [MDOC] followed by *supervised probation* of ten years." 856 So. 2d at 420 (emphasis added). "Miller was found guilty and sentenced to one year in the custody of the [MDOC] followed by ten years of *post-release supervision*..." **Id.** at 422 (emphasis added). The Court of

Appeals sua sponte determined that the trial judge had imposed an illegal sentence as evidenced by the following language:

> However, this Court notes that in addition to serving one year in the custody of the Mississippi Department of Corrections, the trial court sentenced Miller to a term of ten years *supervised probation*. Pursuant to Miss. Code Ann. Section 47-7-37 (Rev. 2000), a period of *post-release supervision* shall not exceed five years. ***Ellis v. State***, 748 So.2d 130 (¶ 12) (Miss. 1999).[3] This Court therefore notes as plain error that portion of the sentence which imposes a period of *post-release supervision* of ten years.

856 So.2d at 425 (emphasis added).

¶10. Supervised probation and post-release supervision are totally different statutory creatures. Miss. Code Ann. § 47-7-33 provides for supervised probation, while Miss. Code Ann. § 47-7-34 provides for post-release supervision. At least two major differences in these two statutes are (1) supervised probation *may not* be imposed on a convicted felon while post-release supervision *may* be imposed on a convicted felon; and, (2) supervised probation is limited to five years while post-release supervision is not. Section 47-7-34 states inter alia that "the total number of years of incarceration plus the total number of years of post-release supervision shall not exceed the maximum sentence authorized to be imposed by law for the felony committed." While the statute unquestionably limits to five years the period of time that the MDOC may supervise an offender who is on post-release supervision, the clear language of the statute does not limit the total number of years of post-release supervision to five years.

¶11. That having been said, we note that the trial court in the case sub judice sentenced Miller, inter alia, as follows:

---

[3] ***Ellis*** involved a supervised probation sentence imposed by the trial judge in 1990, prior to the passage of Miss. Code Ann. § 47-7-34. ***Ellis*** thus did not involve post-release supervision.

6

> The Defendant is hereby sentenced to a term of one (1) year in the Mississippi Department of Corrections followed by supervised probation under the supervision of the Mississippi Department of Corrections for a period of ten (10) years or until the court in term time or the Judge in vacation shall alter, extend, terminate or direct the execution of the above sentence.
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
> The Defendant is only required to meet with [the] probation officer at the statutory minimum guidelines.

Thus, it is clear that the trial judge was placing Miller on probation, but only five (5) years of which would be served under the supervision of the MDOC with the remaining five years being in essence "unsupervised probation." There is no doubt that Miller could not be required to serve more than five years by way of reporting to a MDOC probation officer (supervised probation), but upon release from the reporting requirements by the MDOC officer and/or the trial court, Miller no doubt could serve the remainder of his sentence by way of unsupervised probation. The sentence was not violative of Sections 47-7-33, 47-7-34 or 47-7-37. Therefore, the Court of Appeals erred in reversing the sentence imposed by the trial court.

## CONCLUSION

¶12. Finding that both the Court of Appeals and the Circuit Court of DeSoto County were correct in holding that the jury properly concluded from substantial evidence as revealed in the record, that Donald Wade Miller was guilty of arson, we affirm Miller's conviction. We also find that the trial court was authorized by the applicable statutes to sentence Miller to one year in the custody of the Mississippi Department of Corrections followed by ten years of supervised probation limited by the clear language of the sentencing order to the maximum five-year period for MDOC supervision.[4] Therefore, we affirm in

---

[4]There is no doubt that the better practice in this situation would have been to sentence the defendant to ten years of post-release supervision as opposed to supervised probation.

7

part, and reverse in part, the judgment of the Court of Appeals and reinstate and affirm in toto the judgment of the DeSoto County Circuit Court.

¶13. Finally, we suggest to our learned trial judges that when sentencing a defendant to a period of incarceration followed by a period of supervision by the MDOC, post-release supervision under the provisions of Miss. Code Ann. § 47-7-34, is the better procedure. Additionally, we suggest to our trial judges that when sentencing a defendant to either supervised probation or post-release supervision, it should be made clear in the sentencing order that any MDOC supervision is limited to no more than the statutory maximum of five years.

¶14. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART, AND THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED**.

**SMITH, C.J., GRAVES AND RANDOLPH, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY. WALLER, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COBB, P.J., AND DICKINSON, J. DIAZ, J., NOT PARTICIPATING**.

**WALLER, PRESIDING JUSTICE, DISSENTING:**

¶15. Because the evidence was insufficient to establish beyond a reasonable doubt that Donald Wade Miller was guilty of arson, I respectfully dissent.

¶16. The plurality relies on the Court of Appeals' conclusion that the following evidence was consistent with the guilty verdict rendered against Miller:

> (1) Miller was the sole occupant of the trailer, (2) a telephone call was made from the trailer approximately ten minutes before the fire was reported, (3) Miller was the last person known to be at the trailer, (4) a car was seen leaving the vicinity of Miller's trailer shortly before the fire,

8

(5) the fire was started deliberately, (6) Miller was at home between 2:38 p.m. and 2:40 p.m., (7) the fire was reported at approximately 2:49 p.m., and (8) a call was made from Miller's trailer at approximately 2:38 p.m.

*Miller v. State*, 856 So. 2d 420, 423 (Miss. Ct. App. 2003).

¶17.    The fact that Miller lives alone does not, in my view, weigh in favor of either a verdict of guilty or innocent. Further, Miller does not dispute that he was in the trailer in the minutes prior to the fire starting or that he was the last person known to be in the trailer. Miller admits that he had been on the internet and departed just prior to the fire starting.

¶18.    Additionally, the fact that a car was seen leaving the vicinity shortly before the fire does not strongly support the guilty verdict when considering the testimony of Gemenie Bowdre. Bowdre lived adjacent to Miller. She testified that she was at her mailbox when she saw "a car, . . .coming out of one of the driveways north of me. And I'm not sure which driveway it was coming out of, but it was the Miller driveway or the other drive." Further, when asked what kind of vehicle she saw, Bowdre stated, "I don't know vehicles unless I really see the name on them." Bowdre testified that after seeing the car leave, she noticed smoke coming from Miller's home.

¶19.    The only evidence of a fire being deliberately started came from Mike Hancock, the fire investigator with the DeSoto County Fire Department, who testified that the trained canine used in his investigation indicated that a flammable liquid was present on the middle of Miller's couch. This was confirmed by Brad Schinker, a fire investigator with Unified Investigations and Sciences, who eliminated all of the accidental ignition sources and concluded that Miller's sofa was the fire's origin. Schinker concluded that the fire started by "introduction of an ignition source by some type of human action. I mean, human action, by

9

someone physically coming in and bringing it into the area, an ignition source." This alone does not show that the fire was started deliberately.

¶20.    Arson requires that the fire be set "willfully and maliciously." Miss. Code Ann. § 97-17-1(1) (Rev. 2000). Darlene Ellis, Miller's sister, testified that she previously owned the couch. At the end of November or December, she saw her children spill gun cleaning solvents on the couch while they were cleaning their guns. She further testified that she gave the couch to Miller because he did not have any furniture. At trial, Miller testified that he placed his mail on the couch when he got home, that later he went back to the couch to look through his mail and that it was possible he was smoking at that time. Miller testified that he may have accidentally started the fire but did not intentionally.

¶21.    The record here reflects no physical evidence linking Miller to the fire. The State attempted to show that Miller had motive because of his financial troubles. However, Miller's insurance coverage was for approximately $31,000.00, and Miller testified that he owed $43,000.00-$44,000.00 as of the date of the fire. Additionally, there is no significant evidence that Miller attempted to remove any personal property from his home prior to the fire, including guns, the computer and all furnishings. In fact, a friend of Miller's noticed the fire and removed Miller's dog from a fenced area directly behind the burning trailer.

¶22.    The facts here are no more damaging than those in *Gatlin v. State*, 754 So.2d 1157 (Miss. 1999). Gatlin was at the scene of a fire at a time when he could have started the fire, but Gatlin did not admit that he actually started the fire. *Id.* at 1159. Gatlin had domestic trouble with a girlfriend as a motive. *Id.* The fire marshal testified that an accelerant had been used in such an amount that it was no accident.

10

*Id.* Further, no physical evidence was found to connect Gatlin with the fire. *Id. Gatlin* was reversed by this Court for insufficient evidence.

¶23.　This Court has reversed several other arson convictions due to insufficient evidence. *See **Isaac v. State***, 645 So.2d 903 (Miss. 1994) (Isaac stated that he may have started the fire at his girlfriend's apartment, but did not do so intentionally; Isaac was father of girlfriend's children and girlfriend had put him out of apartment a week before the fire); ***White v. State***, 441 So.2d 1380 (Miss. 1983) (witness stated that White asked him to assist in burning of car to defraud insurer; reversed and rendered on plain error); ***Moody v. State***, 371 So.2d 408 (Miss. 1979) (this Court found two prosecution witnesses not credible and reversed and rendered); ***Holloman v. State***, 151 Miss. 202, 117 So. 532 (1928) (trouble existed between defendant and owner of barn; defendant's father's property, normally stored in barn, had been moved before fire; witness stated that defendant told him he would burn the barn and tried to get witness to help; tracks similar to defendant's were found near point of origin of fire). Likewise, this Court reversed Gatlin's conviction because there was no more evidence supporting Gatlin's conviction than in ***Isaac***, ***White***, ***Moody***, and ***Holloman. Gatlin***, 754 So.2d at 1159.

¶24.　Viewing the evidence here in the light most favorable to the verdict, I fail to see how a reasonable, hypothetical juror could find beyond a reasonable doubt that Miller was guilty of arson. For this reason, I would reverse the Court of Appeals' judgment and reverse and render Miller's conviction and sentence.

**COBB, P.J., AND DICKINSON, J., JOIN THIS OPINION.**