856 So.2d 420 (2003)
Donald Wade MILLER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01223-COA.
Court of Appeals of Mississippi.
April 1, 2003.
Rehearing Denied June 10, 2003.
Certiorari Granted September 25, 2003.
James W. Amos, Hernando, attorney for appellant.
Office of the Attorney General by: W. Glenn Watts, attorney for appellee.
Before KING, P.J., LEE and IRVING, JJ.
KING, P.J., for the court.
¶ 1. Donald Wade Miller was convicted of arson in the DeSoto County Circuit Court. He was sentenced to a term of one year in the custody of the Mississippi Department of Corrections followed by supervised probation of ten years. Aggrieved by his conviction, Miller has perfected this appeal. He presents for this Court's consideration the following issues, which we quote verbatim:

*421 I. The court erred in failing to sustain the motion for directed verdict made by Defendant at the close of the State's case-in-chief, and at the conclusion of the trial, and the court erred in failing to give Defendant's peremptory instruction at the conclusion of the trial.
II. The verdict of the jury is contrary to law and the weight of the evidence.

FACTS
¶ 2. At approximately 2:49 p.m. on February 29, 2000, the Love Volunteer Fire Department received a report of a fire at 3789 Jaybird Road, Hernando, Mississippi, the residence of Donald Wade Miller. Upon arrival, Sam Witt of the Hernando Fire Department observed smoke coming from the roof on the right front side of the trailer home.
¶ 3. DeSoto County Deputy Fire Marshall Mike Hancock was called to investigate the matter and arrived at approximately 4:00 p.m. with a canine trained to sign for accelerants or flammable liquids. Shortly thereafter, Miller returned home, and at the request of Officer Hancock consented to a search of the property. Officer Hancock allowed his trained canine to search the property for accelerants. The canine signaled the presence of an accelerant in the center of the couch. Photographs were entered into evidence of the couch and the canine's search.
¶ 4. At trial, Mike Lynchard, a custodian of records at BellSouth Telecommunications, testified that a two minute call from Miller's unlisted number at the trailer home was made at 2:38 p.m. on the day of the incident to a Memphis phone number. Lynchard stated that he did not know to whom the Memphis number was listed nor who made the call to that number.
¶ 5. John Anderson, an acquaintance of Miller, testified that when he drove by Miller's trailer, he "noticed smoke coming from the trailer." He slowed down and noticed fire "through the window of the trailer." Anderson stopped, called 911 to report the fire at approximately 2:49 p.m., and moved Miller's dog from the yard.
¶ 6. Geniene Bowdre, who lived across the street from Miller, testified that on the day of the incident, she saw a vehicle coming out of one of the driveways, either Miller's or the one next to him, but she was not sure. Then, she saw smoke coming from the trailer.
¶ 7. Sam Lauderdale, a State Farm Insurance agent, testified that Miller's mother is an employee of his and that he "got a telephone call that Donnie's home was on fire. And a few minutes later, he (Miller) pulled into the parking lot and came into the office or came up the office steps, and I walked out and said, `[w]e've gotten a call that your home is on fire.' And he turned around and left."
¶ 8. Bradley Schinker, the State's fire investigator expert, testified that when he came to the east side of the living room, he noticed that the couch was almost burned out in the center and that "the fire started in this area." Schinker also indicated that he found no faulty wiring after inspecting the trailer. He testified that smoking was ruled out and that he determined this was some type of intentional act.
¶ 9. Lee James, a claims representative for State Farm Insurance, testified that she interviewed Miller, who admitted that he was a smoker but denied being on his couch smoking the day of the fire.
¶ 10. At the conclusion of the State's case, Miller moved for a directed verdict claiming that the State had failed to prove beyond a reasonable doubt that he had committed arson. This motion was denied.
¶ 11. Miller testified that he did not intentionally start the fire. He stated that *422 he might have accidentally started the fire, but did not state how it may have accidentally occurred.
¶ 12. Miller's sister, Darlene Ellis, testified that she owned the couch prior to giving it to her brother. She stated that her boys spilled gun cleaning solvent on the couch approximately three months prior to it being given to Miller.
¶ 13. Miller requested a peremptory instruction which was denied by the trial court. Miller was found guilty and sentenced to one year in the custody of the Mississippi Department of Corrections followed by ten years of post-release supervision for the purpose of insuring payment of restitution in the amount of $51,255.91 to State Farm.
¶ 14. Miller filed a motion for JNOV, or in the alternative, a motion for a new trial, which was denied.

ISSUES AND ANALYSIS

I.
Whether the trial court erred in denying Miller's motion for directed verdict and in denying Miller's request for a peremptory instruction.
¶ 15. Miller argues that the trial court erred in denying his motion for a directed verdict and erred in denying his peremptory instruction. He suggests that there was insufficient evidence to establish that he intentionally set fire to his trailer. Miller relies on Isaac v. State, 645 So.2d 903 (Miss.1994) to support his argument. In Isaac, the court reversed and rendered holding the evidence insufficient to conclude that Isaac intentionally started a fire at Shannon Jackson's apartment in McComb, Mississippi. Isaac had lived with Jackson previously, but they were not living together on the day of the fire. Isaac testified that he went to Jackson's apartment between 1:00 and 1:30 a.m., knocked on the front door, but did not get an answer. He indicated that he had a cigarette in his right hand and lifted the mailbox up with his left hand and started calling Jackson. Afterwards, Isaac lifted the towel hanging on the front door to look through the window. Because the towel on the other side of the door prevented him from seeing inside, Isaac then proceeded to the back door where Jackson told him that the front door was on fire. He went into the apartment and put the fire out with the fire extinguisher, told Jackson not to call the police, and left. Isaac stated that he did not intentionally start the fire at Jackson's apartment. The supreme court noted that "the State failed to prove beyond a reasonable doubt that Isaac `willfully and maliciously' started the fire in question." Isaac v. State, 645 So.2d 903, 910 (Miss.1994).
¶ 16. When faced with a challenge to the sufficiency of the evidence, this Court views the denial of a directed verdict and the denial of a peremptory instruction in the following manner:
In judging the sufficiency of the evidence on a motion for a directed verdict or request for peremptory instruction, the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant. Clemons v. State, 460 So.2d 835 (Miss.1984); Forbes v. State, 437 So.2d 59 (Miss.1983); Bullock v. State, 391 So.2d 601 (Miss.1980). If, under this standard, sufficient evidence to support the jury's verdict of guilty exists, the motion for a directed verdict and request for peremptory instruction should be overruled.
Isaac v. State, 645 So.2d 903, 907 (Miss. 1994).
*423 ¶ 17. The evidence consistent with the verdict is as follows: (1) Miller was the sole occupant of the trailer, (2) a telephone call was made from the trailer approximately ten minutes before the fire was reported, (3) Miller was the last person known to be at the trailer, (4) a car was seen leaving the vicinity of Miller's trailer shortly before the fire, (5) the fire was started deliberately, (6) Miller was at home between 2:38 p.m. and 2:40 p.m., (7) the fire was reported at approximately 2:49 p.m., and (8) a call was made from Miller's trailer at approximately 2:38 p.m.
¶ 18. The evidence in this case is purely circumstantial. However, a verdict of guilty may properly be based upon circumstantial evidence. Walton v. State, 642 So.2d 930, 932 (Miss.1994). When the evidence is considered and the evidence favorable to the State, including all reasonable inferences, is accepted as true, it is apparent that Miller was not entitled to a directed verdict or peremptory instruction.
¶ 19. Miller seems to place great weight upon the Isaac case. However, in Isaac, the defense offered a plausible and unrebutted suggestion of accident. That is not true in this case.

II.
Whether the verdict was contrary to law and against the weight of the evidence.
¶ 20. Miller argues that the verdict was contrary to law and against the weight of the evidence. He claims that Gatlin v. State, 754 So.2d 1157 (Miss.1999) and Holloman v. State, 151 Miss. 202, 117 So. 532 (1928) are cases which are comparable to his, where the court reversed the convictions for arson for insufficient evidence for inferring that the defendants started the fires. In Gatlin, a witness testified that he took Gatlin to his girlfriend's house to retrieve his wallet and other papers. The house was destroyed by fire that same morning. The witness stated that Gatlin did not take any accelerant into the house, nor did they speed away or attempt to conceal their movements upon leaving the house. The fire marshall testified that an accelerant was used to start the fire and that it was his opinion that the fire was not accidentally started. Upon review, the Mississippi Supreme Court stated:
In this case Gatlin was at the scene of the fire at a time where he could have started the fire, but there was no admission by him that he actually did start the fire, such as with Isaac. Gatlin's motive, if any, was similar to that of Isaac's, domestic troubles with his girlfriend. Fire Marshall Clark testified that an accelerant had been used to start the fire, in such an amount that he felt it was no accident, but there is no physical evidence connecting Gatlin with the fire. We find that there is no more evidence supporting this conviction than any of the others previously cited which this Court reversed and rendered. The judgment of the Court of Appeals is reversed and rendered in favor of Larry Gatlin.
Gatlin v. State, 754 So.2d 1157(¶ 9) (Miss. 1999). Gatlin was reversed due to insufficient evidence to support a conviction; Holloman was reversed for the same reason.
¶ 21. In Holloman, the defendant was a tenant on the Shows' farm. There was some trouble between Shows and Holloman or Holloman's father. A witness testified at trial that Holloman said that he was "`going to burn the house or barn of Mr. Shows in order to get even,' that Shows had beat him out of his crop, and that appellant attempted to get him to aid him in the burning of the house or barn." On the night of the fire, Holloman's father's property, which was usually kept in *424 the barn, had been removed. The fire originated in the rear of the barn. There were tracks found in the rear of the barn that were made by a person wearing a peculiar shoe, run over on the side, and a worn place in the center of the sole. Bloodhounds followed this track for about two miles, lost it, and picked it up again, then followed it into the village of Ovette, where it was lost. There was testimony that the track found near the rear of the barn compared favorably with the shoe track made by the shoes worn by Holloman when he was arrested. Nevertheless, the supreme court noted there was a lack of substantial evidence sufficient to sustain a conviction for arson.
¶ 22. In this matter, this Court must review all evidence contained in the record. Challenges to the weight of the evidence are viewed as follows:
Procedurally, such challenges contend that defendant's motion for new trial should have been granted. Miss. Unif. Crim. R. of Cir. Ct. Prac. 5.16. The decision to grant a new trial rests in the sound discretion of the trial court, and the motion should not be granted except to prevent "an unconscionable injustice." "[We must] consider all the evidence, not just that supporting the case for the prosecution, in the light most consistent with the verdict," and then reverse only on the basis of abuse of discretion. The prosecution is entitled to the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion is required.
Jones v. State, 635 So.2d 884, 887 (Miss. 1994) (citations omitted).
¶ 23. This Court noted the evidence in support of the verdict in addressing issue I, and will not repeat it here. Miller denied deliberately setting a fire, but admitted that he might have started a fire accidentally as a result of smoking. Under direct examination he testified to the following:
Q. What did you do after that?
A. I went back in the living room, grabbed my mail and started looking at it.
Q. How long did that take?
A. Not even five minutes.
Q. Were you smoking then?
A. I don't recall.
Q. Could you have been smoking?
A. Possibly.
Q. And then what happened? What did you do?
A. After I got through looking at my mail and everything, I was sitting there on the couch to see what, you knowthe day is still young so I decided to go up town. So I went up town to my friend's garage.
...
Q. Did he (Mr. Schinker) ask you whether or not you smoked that day in the house?
A. No, he didn't.
Q. Did he ask you if you smoked anywhere in the house, the living room?
A. He didn't really specifically ask me any questions. We was [sic] just general conversation.
...
Q. Let me ask this question: Mr. Miller, did you intentionally start this fire?
A. No, I didn't.
Q. Is it possible that you started it?
A. Accidentally maybe, but not intentionally.
*425 ¶ 24. The State on cross-examination noted several discrepancies in Miller's testimony. Representative of them is the following testimony:
Q. Well, if you're on your computer at 2:49 and he's (John Anderson) calling 911 at 2:49, that means you're inside while your place is on fire?
A. I wasn't there.
Q. You just said you were there at 2:49.
A. I might have been there at 2:49, but my place wasn't on fire while I was there.
Q. So the records are wrong?
A. I guess they are.
...
Q. We've heard or seen a written statement. We've heard testimony from two other witnesses, actually three. You denied that Brian Schinker ever asked you about smoking cigarettes. This gentleman right here. So he's lying, right?
A. I never told him that I was not smoking in my house.
Q. Well, then, therefore, that means he's lying when he took the stand, right?
A. I guess he did.
¶ 25. Any conflicts in evidence are to be resolved by the jury. Groseclose v. State, 440 So.2d 297, 301 (Miss.1983).
Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into finding of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augumented [sic] by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.
Id. at 300.
¶ 26. In this case the record contains substantial evidence from which the jury could conclude that Miller was guilty of arson. This Court affirms the ruling of the trial court.
¶ 27. However, this Court notes that in addition to serving one year in the custody of the Mississippi Department of Corrections, the trial court sentenced Miller to a term of ten years supervised probation. Pursuant to Miss.Code Ann. Section 47-7-37 (Rev.2000), a period of post-release supervision shall not exceed five years. Ellis v. State, 748 So.2d 130(¶ 12) (Miss.1999). This Court therefore notes as plain error that portion of the sentence which imposes a period of post-release supervision of ten years.
¶ 28. We therefore affirm the conviction, but reverse and remand for the limited purpose of correcting that portion of the sentence which requires post-release supervision for a period in excess of five years.
¶ 29. THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT OF CONVICTION OF ARSON IN THE FIRST DEGREE AND SENTENCE OF ONE YEAR IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY RESTITUTION OF $51,255.91 IS AFFIRMED. THAT PORTION OF THE SENTENCE IMPOSING TEN YEARS OF POST RELEASE SUPERVISION IS REVERSED AND REMANDED FOR CORRECTION OF SENTENCE CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL *426 ARE ASSESSED AGAINST THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.