885 So.2d 720 (2004)
Ronnie G. OSWALT, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01696-COA.
Court of Appeals of Mississippi.
March 16, 2004.
Rehearing Denied July 27, 2004.
Certiorari Denied November 4, 2004.
Steven E. Farese, David Lee Robinson, Ashland, attorneys for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before KING, P.J., THOMAS and MYERS, JJ.
THOMAS, J., for the Court.
¶ 1. Ronnie Oswalt appeals his conviction by a Chickasaw County jury of two counts of arson. He assigns two errors for appellate review:
I. THE TRIAL COURT ERRED BY NOT GRANTING RONNIE OSWALT'S MOTION FOR A DIRECTED VERDICT AT THE CLOSE OF *721 THE STATE'S CASE-IN-CHIEF, THE TRIAL COURT ERRED BY NOT GRANTING A DIRECTED VERDICT AT THE CLOSE OF ALL THE TESTIMONY, AND THE TRIAL COURT ERRED BY NOT GRANTING RONNIE OSWALT'S MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT.
II. THE TRIAL COURT ERRED BY ALLOWING EVIDENCE OF OTHER PRIOR CRIMES, WRONGS OR BAD ACTS ALLEGEDLY COMMITTED BY RONNIE OSWALT.
¶ 2. We find that Oswalt was entitled to a directed verdict and therefore reverse and render judgment in favor of the appellant.

FACTS
¶ 3. Ronnie and Sherry Oswalt had been married approximately ten years when Sherry decided to end the marriage in September 2001. Sherry and her child moved in with her mother, Rebecca Scott. Over the next several months, Oswalt made several attempts to contact and reconcile with Sherry. These were unsuccessful and usually ended with angry shouting by Oswalt. Unpleasant calls were also made to the homes of Sherry's two brothers and their respective wives, threatening to get even with them for what Oswalt perceived was their interference in his marriage.
¶ 4. On the morning of December 22, 2001, Oswalt went to the home of Rebecca Scott and attempted to speak with Sherry, who had been about to leave the home to go shopping. The encounter was characterized by screaming and nonspecific threats by Oswalt. Sherry locked herself in her truck in the driveway of the home. Scott heard the noise and looked out the window of the house. Scott later said that Oswalt came close to the window and told her, through the window, that he intended to burn the homes of Sherry's two brothers and Scott's home. Scott was uncertain of the exact time this statement was said to have been made but she supposed it occurred around 9:30 a.m. or soon after. No one else heard the threat. Shortly thereafter, Oswalt left the home.
¶ 5. While Oswalt was outside, Scott called her daughter-in-law, Marianne Crawford, and asked that Marianne call the police due to her concern over Oswalt's behavior. Police arrive after Oswalt had retreated. Scott did not speak to the responding officer nor did she tell anyone of the threats Oswalt had made to burn her home and those of her sons.
¶ 6. At 10:50 a.m., emergency services was notified of a house fire at the residence of Darrell Crawford. The fire was determined to have originated on the couch in the den of the house. Darrell Crawford was home sleeping at the time the fire was discovered. There were no signs of forced entry into the home. No evidence of an accelerant, such as gasoline, was found. The fire investigator concluded the fire had been started using an open flame, such as a lighter or match.
¶ 7. One hour later, officials were called to a fire at the home of Sherry's other brother, Randy Crawford. The house was unoccupied by the family at the time. Clothing near the washer and dryer had caught fire. Again, investigators found no evidence of an accelerant. Both fires were deemed suspicious. At some point, family members alerted police to their suspicion the fires had been started by Oswalt based upon his prior behavior towards them. A police officer was dispatched to Oswalt's home, apparently for the sole purpose of determining his location and watching him. Oswalt was found at home when authorities arrived.
*722 ¶ 8. Later that day, Oswalt was arrested. He was indicted for two counts of arson. Five months later, on the eve of a bail hearing, Scott for the first time reported the threat Oswalt had made to her on the morning of the fires. Trial on the charges was had on September 20, 2002. The jury found Oswalt guilty on both charges the following day.

ANALYSIS

Sufficiency of the evidence
¶ 9. In his first assignment of error, Oswalt contests the denial of his motions for a directed verdict and for a judgment of acquittal notwithstanding the verdict. Both of these challenge the legal sufficiency of the evidence presented against a defendant. Higgins v. State, 725 So.2d 220, 224 (¶ 20) (Miss.1998).
¶ 10. When reviewing a claim of insufficient evidence on appeal, we look to the evidence most supportive of the State's case. Harrell v. State, 583 So.2d 963, 964 (Miss.1991). "All evidence supporting, or tending to support the verdict, as well as all reasonable inferences that may be drawn from the evidence, must be accepted as true." Id. Where there is competent evidence to sustain a verdict, it will not be disturbed on appeal. Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979).
¶ 11. It was the fire investigator's considered opinion the fires had been deliberately set. This does not connect Oswalt with the fires in any fashion. There is no physical evidence tying him to the crimes and no witnesses who saw him in the vicinity of either premises around the time the fires were ignited. Although there was evidence of forced entry into the home of Randy Crawford, there was none at the home of Darrell Crawford. Darrell Crawford was home at the time the fire started but there is no evidence that he noticed anything untoward occurring in the house, nor any evidence that Oswalt had a key or other access into the home. The only apparent evidence tending to link Oswalt with the fires is the statement he may have made to his mother-in-law on the morning of the blazes.
¶ 12. For well over a century, the law of this State has been that a threat alone is insufficient to support a conviction of arson. Luker v. State, 14 So. 259 (Miss.1894) (see also Strong v. State, 23 So. 392 (Miss.1898); Holloman v. State, 151 Miss. 202, 117 So. 532 (1928); Rutledge v. State, 171 Miss. 311, 157 So. 907 (1934); Gatlin v. State, 754 So.2d 1157 (Miss.1999)). All of these cases deal with situations similar to our own in that animosity existed between the defendant and the owner of the burned property, and the defendant was known to have made threats against the property owner, either specifically to burn property or general threats of retribution. It has been uniformly held that threats alone create no more than a suspicion of guilt and not proof of guilt beyond a reasonable doubt. Luker, 14 So. at 259.
¶ 13. This law is so well entrenched that the supreme court has taken the extraordinary step in the recent past of reversing a conviction for insufficient evidence even though such was not assigned as error by the appellant. White v. State, 441 So.2d 1380, 1381 (Miss.1983). That court has also reversed decisions of this Court affirming a conviction in situations with arguably more evidence than was presented against Oswalt. Gatlin, 754 So.2d at 1159(¶ 9).
¶ 14. These precedents make clear that something more than a threat must link a defendant with the setting of a fire. It need not be direct evidence. Circumstantial evidence may be sufficient to properly convict one of arson. Miller v. State, 856 So.2d 420, 423 (¶ 18) (Miss.Ct. *723 App.2003). Circumstantial evidence of means, motive and opportunity would likely suffice but not circumstantial evidence of motive alone. Mere suspicion, no matter how well grounded, is an insufficient basis upon which to base a criminal conviction.
¶ 15. Because we reverse and render judgment based upon the sufficiency of the evidence, the question of improper admission of prior bad acts is moot.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF CHICKASAW COUNTYIS REVERSED AND RENDERED. COSTS OF THIS APPEAL ARE ASSESSED TO CHICKASAW COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.