# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CP-01810-COA

BILLY WHEATER A/K/A BILLY NEAL WHEATER A/K/A BILLY N. WHEATER                                        APPELLANT

v.

STATE OF MISSISSIPPI                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/20/2013 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BILLY WHEATER (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA BYRD |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | DENIED MOTION FOR POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 03/17/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., BARNES AND ISHEE, JJ.

### ISHEE, J., FOR THE COURT:

¶1. In 2000, Billy Wheater was convicted in the DeSoto County Circuit Court of aggravated assault. He was sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC), with six months to serve, and nineteen years and six months of post-release supervision (PRS). He was also ordered to pay $6,025.33 in restitution. After he was released in 2001, Wheater was ordered to pay monthly installments toward his restitution as a condition of his PRS. Ten years later, the circuit court found that Wheater had only paid $800 of his restitution and had willingly failed to make scheduled

payments, despite assistance from the court.  Accordingly, his PRS was revoked.  Aggrieved, Wheater now appeals.  Finding no error, we affirm.

## STATEMENT OF FACTS

¶2.     This case stems from a fist fight involving multiple parties, including Wheater, in DeSoto County, Mississippi.  At some point during the fight, Wheater picked up a four-bar tire iron and hit another man over the head with it.  The man suffered from a fractured skull and was sent to an intensive-care unit for some time.  Although he fully recovered, the man incurred over $6,000 in medical bills.

¶3.     In November 2000, Wheater pleaded guilty to aggravated assault following the incident.  After a lengthy discussion with Wheater, his attorney, the State's attorney, and the victim, the circuit judge sentenced Wheater to twenty years, with six months to serve in custody followed by nineteen years and six months of PRS.  The purpose of the sentence was to create a better opportunity for Wheater to repay the victim for his medical bills by working outside of a prison.  During the sentencing hearing, Wheater testified that he worked in sales at a flea market and would be able to make monthly payments upon his release from jail.  The circuit judge ordered Wheater to pay $200 a month in restitution beginning sixty days after his release from prison.  The circuit judge specifically asked Wheater if he understood that the monthly payments were required to be made without fail or he would be sent back to prison.  Wheater acknowledged and accepted the terms and the consequences of the ordered restitution.

¶4.     After serving six months in prison, Wheater was released on PRS. The record reflects that in September 2001 and July 2002, the State filed respective motions requesting that

Wheater's PRS be revoked for his failure to make restitution payments. The first motion, filed in 2001, was denied after Wheater promised the circuit court that he would make timely payments. When Wheater again failed to make payments, the circuit court conducted a hearing regarding the second motion. There, Wheater and his mother testified that the failure to make payments was due to family problems and illnesses. However, Wheater and his mother promised to become current on Wheater's arrears — approximately $1,200 at the time of the hearing — if the circuit judge were to grant them an extension of several weeks. The circuit judge agreed.

¶5.     Nonetheless, Wheater failed to pay his restitution in a timely manner, and the State filed another motion to revoke Wheater's PRS in 2003. At the hearing on the motion, Wheater again cited family trouble and an inability to find a job as the reasons for his failure to pay. The circuit judge continued the matter for several more months in order to allow Wheater the opportunity to find a job. The circuit judge threatened to send Wheater to a restitution center for employment if he failed to find a job or, alternatively, to send Wheater back to jail.

¶6.     In 2004, during a hearing involving another motion to revoke Wheater's PRS for failure to make restitution payments, Wheater informed the circuit judge that he was involved in a civil lawsuit and was in the process of negotiating a settlement that would allow him to pay the balance of the restitution he owed. The circuit judge ordered fifty-eight days of Wheater's suspended sentence to be revoked, and noted that Wheater "must keep [the] clerk's office informed of [the] civil lawsuit['s] progress, give [the] name and telephone [number] of [the] civil attorney [involved], and pay off all financial assessments immediately

3

upon settlement of his civil case."

¶7.     Over six years later, Wheater had not made any restitution payments despite warnings from the circuit court and multiple continuances granted as opportunities for Wheater to find employment and make payments. Accordingly, the State filed another motion to revoke his PRS. At a hearing on the matter in January 2011, the circuit court offered Wheater the opportunity to serve as a confidential informant (CI) for the DeSoto County Sheriff's Office Street Crimes Unit (SCU). Wheater accepted the job, and was ordered to make monthly restitution payments of $100.

¶8.     Between January and July 2011, Wheater was paid approximately $2,200 for his work as a CI. Nonetheless, he did not make any payments during that time. In September 2011, Wheater was arrested after failing to appear for a hearing regarding the revocation of his PRS. The circuit court ordered a hearing on October 24, 2011, to address Wheater's nonpayment of his restitution. At the hearing, the State entered a cost bill into evidence showing that Wheater had only paid $800 of the $6,025.33 in restitution since his release in 2001. Wheater disputed that amount, claiming he had paid approximately $1,200. Regardless of the amount paid, the circuit judge determined that Wheater had willingly failed to make restitution payments as ordered over the prior decade, despite being given multiple opportunities to do so and being given a job. The circuit court then revoked Wheater's PRS and ordered him to serve the remaining fifteen years of his original sentence.

¶9.     In August 2013, Wheater filed a motion for post-conviction relief (PCR), claiming that the circuit judge was without authority to revoke his PRS and that his sentence was illegal. The circuit court denied the PCR motion. Wheater now appeals on the same grounds

4

asserted in his PCR motion.

## DISCUSSION

¶10. "When reviewing a [trial] court's decision to deny a [PCR] petition[,] . . . [we] will not disturb the trial court's factual findings unless they are found to be clearly erroneous." *Callin v. State*, 975 So. 2d 219, 222 (¶8) (Miss. 2008). We review questions of law de novo. *Brown v. State*, 71 So. 3d 1267, 1268 (¶4) (Miss. Ct. App. 2011).

¶11. Wheater first argues that the circuit court was without authority to revoke his PRS on the basis of his failure to make restitutions payments. Indeed, it is well settled that a court may not imprison a defendant due to an *inability* to pay restitution; however, this does not "preclude[] imprisonment for *willful refusal* to pay . . . ." *Summerall v. State*, 132 So. 3d 613, 615 (¶12) (Miss. Ct. App. 2013) (emphasis added) (quoting *Williams v. Illinois*, 399 U.S. 235, 242 n.19 (1970)). The United States Supreme Court has addressed this issue on point and has stated:

> This distinction, based on the reasons for non-payment, is of critical importance here. If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense. But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available.

*Bearden v. Georgia*, 461 U.S. 660, 668-69 (1983); *see also Berdin v. State*, 648 So. 2d 73, 78-79 (Miss. 1994) (overruled on other grounds by *Smith v. State*, 742 So. 2d 1146 (Miss.

5

1999)).

¶12.   Here, the circuit court granted Wheater ten years worth of opportunities to make payments toward his restitution.  The record is riddled with hearings and dialogue between the circuit judge and Wheater wherein Wheater promised to make payments by way of tax refunds, future jobs, legal settlements, and borrowed money.  After a decade of excuses, the circuit judge ultimately sought out a job for Wheater through the SCU, which Wheater accepted.  Nonetheless, after $2,200 earned in income from his job as a CI, Wheater still refused to contribute any of that money toward his over-$6,000 restitution bill.  It is clear from the record that the circuit judge made every effort to afford Wheater the opportunity to make payments in the eleven years after his sentence was imposed.  Despite a documented $2,200 in earned revenue, Wheater still refused to pay the restitution.  Wheater cannot claim an inability to make payments toward his restitution when the SCU documented $2,200 in payments to him over a seven-month period. On average, it would appear that Wheater made approximately $315 a month with the SCU.  Hence, the $100 monthly restitution payments should have been made, at the very least, during those months.  This issue is without merit.

¶13.   Next, Wheater cites Mississippi Code Annotated section 47-7-34(3) (Rev. 2011) for the notion that his PRS was statutorily limited to a maximum of five years and, hence, the sentence was illegal.  Section 47-7-34(3) states: "[PRS] programs shall be operated through the probation and parole unit of the Division of Community Corrections of the [MDOC]. The *maximum amount of time that the* [*MDOC*] *may supervise an offender* on the [PRS] program is five (5) years."  (Emphasis added).   Nonetheless, this does not strictly prohibit a court from imposing PRS for longer than five years if the offender is supervised outside of

6

the MDOC.

¶14.    Both this Court and the supreme court have previously addressed this issue, and have

explained it in the following way:

> [T]he supreme court has made it clear that [PRS] is not limited to five years. "While the statute unquestionably limits to five years the period of time that the MDOC may supervise an offender who is on [PRS], the clear language of the statute does not limit the total number of years of [PRS] to five years." *Miller v. State*, 875 So. 2d 194, 199 (¶10) (Miss. 2004). The MDOC has the responsibility of monitoring the convicted defendant for the first five years[,] after which the court assumes that responsibility for the remainder of the term of [PRS]. *Johnson v. State*, 925 So. 2d 86, 102 (¶30) (Miss. 2006). . . . The statute imposes a limit on the burden that a court may place on the MDOC to supervise a defendant. But, as the supreme court noted, "the court is not so limited concerning the burden it may place on itself by way of monitoring a defendant's behavior while the defendant is [on PRS]." *Id*.

*Ray v. State*, 976 So. 2d 398, 402 (¶15) (Miss. Ct. App. 2008). Accordingly, the circuit court

was operating with authority when it imposed a PRS term for nineteen years and six months

as part of its sentence.

¶15.    Wheater's next assignment of error is based on Mississippi Code Annotated section

99-19-25 (Supp. 2014). He asserts that the circuit court was without authority to revoke his

PRS after five years. Section 99-19-25 states that circuit courts, "in misdemeanor cases, are

hereby authorized to suspend a sentence . . . on such terms as may be imposed by the judge

of the court. Provided, the suspension of imposition or execution of a sentence may not be

revoked after a period of five (5) years."

¶16.    Wheater's reliance on this statute is misplaced for two reasons. First, the statute only

applies to misdemeanors, not felonies. Aggravated assault is a felony, not a misdemeanor.

*See* Miss. Code Ann. § 97-3-7(1)-(2) (Supp. 2014). Second, it applies to suspended

sentences, not sentences for PRS. A sentence of PRS is not the same judicial creature as a suspended sentence. *See Johnson v. State*, 925 So. 2d 86, 93-94 (¶14) (Miss. 2006). Accordingly, this issue is meritless.

¶17. Finally, Wheater requests that he receive credit for time served toward his sentence. However, this is an issue properly placed before the MDOC first. A petitioner "should send such requests to the proper authorities within the [MDOC's] administrative system. If [the petitioner] is denied the proper relief, or credit for time served, by the administrative system, he should then turn to the courts to seek remedy." *McDonald v. State*, 16 So. 3d 83, 85 (¶6) (Miss. Ct. App. 2009) (citation omitted). Hence, we are without authority to review Wheater's final assertion at this time.

¶18.  **THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY**.

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**